[Civ. No. 21085.   First Dist., Div. Three.   Oct. 18, 1963.]

THE SARAH DIX HAMLIN SCHOOL, Plaintiff and Respondent, v. THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

Thomas M. O'Connor, City Attorney, Agnes O'Brien Smith and Orville I. Wright, Deputy City Attorneys, for Defendant and Appellant.

Brobeck, Phleger & Harrison and Gregory A. Harrison for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal from a judgment sustaining respondent's claim to the tax exemption allowed by Revenue and Taxation Code section 214 on property used exclusively for school purposes of less than collegiate grade, and owned and operated by a nonprofit corporation.

The Sarah Dix Hamlin School, hereafter referred to as the respondent, is a nonprofit corporation. Its articles of incorporation state that its purpose is to own, conduct and operate a school for girls of less than collegiate grade; that it does not contemplate pecuniary gain or profit, and that no part of its earnings shall inure to its members. The corporation has no stockholders; its directors are its sole members. It is further provided in the articles that, in event of dissolution, the corporation's property shall be distributed to "such corporation or fund for such religious, benevolent or charitable purposes as may be designated by the Board. . . ."

The respondent conducts the Sarah Dix Hamlin School in San Francisco. The school premises are located at 2120 Broadway and 2129 Vallejo Street. The school is of less than collegiate grade, and offers education to girls from the kindergarten level through senior high school. In 1959-1960 there were 202 students in attendance, and in 1961-1962 there were 254. The school is both a day school and a boarding school, but only about 10 per cent of the students are boarders.

The trial court found that all of the school's property for which the exemption is claimed is used exclusively for charitable purposes; that its property is not used for the benefit of any person through distribution of profits or the payment of excessive compensation; that all of the requirements of Revenue and Taxation Code section 214 have been met, and that respondent is entitled to the exemption claimed.

Appellant contends that the trial court is in error in finding that respondent has complied with all the requirements of Revenue and Taxation Code section 214. Specifically, appellant argues that respondent's property is operated for profit; that a portion of the property is not used for the exempt activity; that the property is operated for the benefit of members, employees and other persons; that there is no

proof the property is not used for fraternal or lodge purposes or social club purposes, and finally there is no showing of community benefit from respondent's operations. We have examined each of these contentions and have considered the entire record in the case. We have determined that the trial court was correct in its findings and judgment, and that the judgment must be affirmed.

All property in the state, unless exempt under the Constitution or the laws of the United States, is subject to taxation. (Cal. Const., art. XIII, § 1.) In 1944 section 1c was added to the Constitution.[1] In 1945 the Legislature exercised the power granted to it by the Constitution and enacted Revenue and Taxation Code section 214.[2]

[1]"§ 1c. In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt from taxation all or any portion of property used exclusively for religious, hospital or charitable purposes and owned by community chests, funds, foundations or corporations organized and operated for religious, hospital or charitable purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.''

[2]As presently amended the section reads:

"214. Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

" (1) The owner is not organized or operated for profit; provided, that in the case of hospitals, such organization shall not be deemed to be organized or operated for profit, if during the immediate preceding fiscal year the excess of operating revenues, exclusive of gifts, endowments and grants-in-aid, over operating expenses shall not have exceeded a sum equivalent to 10 per cent of such operating expenses. As used herein, operating expenses shall include depreciation based on cost of replacement and amortization of, and interest on, indebtedness;

" (2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual;

" (3) The property is used for the actual operation of the exempt activity;

" (4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession;

" (5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose;

" (6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or

340

■ Appellant's first contention is that respondent is not a corporation organized for charitable purposes within the meaning of Revenue and Taxation Code section 214.[3] In support of this contention appellant relies upon decisions from other states considering claims for tax exemption under the law as it exists in the various jurisdictions in which those decisions were announced. Appellant's reliance upon those decisions is of no avail here, because the issue has been settled by decision of our own Supreme Court and decisions of our District Courts of Appeal in accord with the law as declared by the Supreme Court. *Lundberg* v. *County of Alameda*, 46 Cal.2d 644 [298 P.2d 1] is the controlling authority, and it settled the law contrary to appellant's contention. In *Lundberg* the Supreme Court determined that an educational purpose is a charitable purpose within the meaning of article XIII, section 1c, and that nonprofit parochial schools were entitled to the tax exemption conferred by section 214. At page 651 the court said: "It thus appears that the word charitable has been given a broad construction in tax exemption cases as well as others, and it would seem clear that nonprofit schools owned by nonprofit organizations and operated for the benefit of the public come within the term charitable as defined by our decisions. Moreover, both the Legislature and the people have construed the term charitable in section 1c of article XIII as authorizing exemption of such

abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific or charitable purposes;

"(7) The property, if used exclusively for scientific purposes, is used by a foundation or institution which, in addition to complying with the foregoing requirements for the exemption of charitable organizations in general, has been chartered by the Congress of the United States (except that this requirement shall not apply when the scientific purposes are medical research), and whose objects are the encouragement or conduct of scientific investigation, research and discovery for the benefit of the community at large.

"The exemption provided for herein shall be known as the 'welfare exemption.' This exemption shall be in addition to any other exemption now provided by law. This section shall not be construed to enlarge the college exemption. Property used exclusively for school purposes of less than collegiate grade and owned and operated by religious, hospital or charitable funds, foundations or corporations, which property and funds, foundations or corporations meet all of the requirements of this section, shall be deemed to be within the exemption provided for in section 1c of article XIII of the Constitution of the State of California and this section."

[3]Hereafter all references to code sections will be to the Revenue and Taxation Code unless otherwise noted.

schools.'' Thus the *Lundberg* case fully disposes of appellant's first contention, and it is idle to mention decisions in other jurisdictions which may suggest a different result.

In support of its contention that respondent is not a charitable corporation, appellant further argues there is no showing that the Sarah Dix Hamlin School is conducted so as to provide any public benefit, and hence the corporation is not charitable. This assertion is founded in part on evidence that respondent's admission procedure is a selective one and that limited financial aid only is extended to some students. Appellant reasons that since respondent's students come largely from families that can pay its tuition charges there is no showing of public benefit. It has long been recognized, however, that charity is not limited to the giving of alms or confined to the relief of the poor. It may in some instances extend to the well-to-do, when some social objective is served or the general welfare is advanced, and where also, but for the activity, the government would provide the service. Pupils attending respondent's school are required by law to attend public school (Ed. Code, § 12101) unless granted some exemption pursuant to Education Code sections 12151-12160. Section 12154 of the Education Code exempts pupils attending private full-time day schools from compulsory attendance at public schools. Thus a public benefit is clearly evident in respondent's operations, because to the extent that it offers education to its students, it relieves a burden of education which might otherwise be imposed upon the public generally. On the evidence before it the trial court could properly find, as it did, that there is a public benefit in respondent's operation of its school, and that respondent's property is devoted to charitable purposes as that term is used in the Constitution and statutes granting tax exemption.

Appellant next points to a supposed profit from respondent's operations, and claims this disqualifies respondent for tax exemption. It is true that in 1959 respondent's books show an operating surplus of $10,768.42, and in 1960 a surplus of $26,276.67. However, it does not follow that an operating surplus, such as is involved here, means profit as that term is used in section 214. Here no part of respondent's operating surplus may inure to the benefit of any private shareholder, for there are none, nor to any individual. ■ It may not be said that respondent is organized or operated for profit merely because in a given year its income exceeds its expense. Neither the Constitution nor the statute

prohibits the earning of an operating surplus in the prudent management of exempt property, where no part of such earnings may inure to the benefit of any private shareholder or individual, or where as here, all of the property, including the operating surplus, is devoted to the exempt purposes for which the property is used. (*St. Francis Memorial Hospital* v. *City & County of San Francisco,* 137 Cal.App.2d 321 [290 P.2d 275].) (See also *Westminster Memorial Park* v. *County of Orange,* 54 Cal.2d 488 [6 Cal. Rptr. 775, 354 P.2d 247].)

Appellant next suggests that the use of respondent's property for housing its students and for providing them with board operates to destroy the exemption claimed. Such is not the law. The evidence shows that most of respondent's students are day students, although some do rely upon the school for board and lodging. This is one of the services provided by the school, and is reasonably related to the exempt activity. Education does not begin and end in the classroom. In a school such as that conducted by respondent, a high educational purpose is found in a continuing association of teachers and students, in the dining room, dormitory and playground. It would be idle to suppose that lessons there learned do not rank high in the scale of importance when compared with the routine of formal instruction. Moreover, it is not essential to support the claim of exemption that the facilities or services provided, such as board and lodging here, be indispensable to the exempt activity. It is sufficient if they are reasonably integrated or related to the exempt activity. (See *St. Francis Memorial Hospital* v. *City & County of San Francisco, supra*; *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045] ; *Serra Retreat* v. *County of Los Angeles,* 35 Cal.2d 755 [221 P.2d 59] ; *Saint Germain Foundation* v. *County of Siskiyou,* 212 Cal.App.2d 911 [28 Cal.Rptr. 393].)

Appellant's next contention is that there is no evidence that the property is not used for fraternal, lodge or social club purposes. (§ 214, subd. (5).) This is fully answered by the record. Respondent's Exhibit 2 at trial was an affidavit filed in support of the claim of exemption. Question No. 9 in section B of the affidavit asks: "Is the property used... for fraternal or lodge purposes or for social club purposes . . . ?" Respondent's answer to this question was "No." There was also direct testimony from the principal of

respondent's school to the effect that all of the school's property was used exclusively for school purposes and for no other purpose. Thus, contrary to appellant's claims, there is ample evidence in the record to support the trial court's finding that the subject property is not used for fraternal or lodge purposes or for social club purposes.

■ Finally, appellant contends the exemption must be denied because the condition set out in section 214, subdivision (6), is not met. Here it is argued that the property of the respondent is not irrevocably dedicated to charitable purposes because it is provided in respondent's articles that, in event of dissolution, respondent's property may be transferred to a corporation or fund for religious, benevolent or charitable purposes. Appellant's objection is to the term "benevolent" and it is contended that this cannot be construed as meaning a charitable purpose. It is true that the term "benevolent" does not necessarily mean "charitable." Nevertheless, the terms are often used interchangeably. In 14 Corpus Juris Secundum page 410 it is said that in its ordinary sense the term "charity" is employed as meaning "benevolent." Webster's Dictionary of synonyms gives "charitable" as, a synonym of "benevolent." Of decisive importance here is the context in which the term "benevolent" is employed. (See *Estate of Hinckley,* 58 Cal. 457, 510-511.) The context in which the term "benevolent" appears is the articles of incorporation of respondent. It is apparent from a reading of the articles that the exclusive purpose of respondent is to own, conduct and operate the Sarah Dix Hamlin School for Girls, which as we have seen is a charitable purpose. The property for which exemption is claimed is held subject to charitable uses, and respondent may not divert its property to any other use. Devotion of its property to a purpose other than the charitable one for which it exists would require intervention of the Attorney General (Corp. Code, § 9505). It seems clear from respondent's articles of incorporation that only a charitable use of its property is intended and that a noncharitable use is neither intended nor possible under the law.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied November 13, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 11, 1963.