56 Cal.Rptr. 658, 423 P.2d 810]

[Sac. No. 7662.   In Bank.   Feb. 24, 1967.]

STOCKTON CIVIC THEATRE, Plaintiff and Appellant,
v. BOARD OF SUPERVISORS OF SAN JOAQUIN
COUNTY et al., Defendants and Respondents.

( 13 )

14

Fred M. Bollinger for Plaintiff and Appellant.

Mitchell, Silberberg & Knupp and John L. Nourse as Amici Curiae on behalf of Plaintiff and Appellant.

Richard W. Dickenson, County Counsel, and Walter J. McInnis, Deputy County Counsel, for Defendants and Respondents.

PETERS, J.—This is an action to recover taxes paid under protest and for declaratory relief, plaintiff contending that it is a charity and entitled to the charitable exemption. The trial court determined that plaintiff is not organized and operated for charitable purposes, and that its property is not used exclusively for charitable purposes. Judgment was entered for defendants. Plaintiff appeals.

The case was tried without a jury on an agreed statement of facts.

The purposes of plaintiff nonprofit corporation, as set forth in its articles of incorporation, are to foster and stimulate interest in drama and music by the production of plays, musicals, light opera, and operettas; to gather, receive, study and disseminate information concerning plays, playwriting, acting, direction and production techniques; and to unite for mutual benefit persons interested in participating in those activities generally carried on by civic theatre groups.

The articles of incorporation also provide that the corporation is formed for purposes other than pecuniary gain, that no dividends or pecuniary profits shall be declared or inure to the members of the corporation, that no financial gain shall accrue to any member in the conduct of the business of the corporation, and that upon dissolution the assets remaining after payment of debts shall be distributed ''to any charitable or civic institution or organization in the sole discretion of the directors.''

In 1962 plaintiff acquired a theatre in the City of Stockton which it uses for the production of popular plays and musical comedies. The real estate is used only for the operation of the theatre, and is not employed to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder. All productions in their entirety are produced by persons of amateur standing.

Membership in plaintiff is unrestricted and is obtained by anyone who purchases a season ticket to plaintiff's plays, ordinarily $6 for four plays. In addition plaintiff obtains revenues from the sale of tickets for single performances and from gifts. Plaintiff's financial statements indicate that for its 1962-1963 season approximately one-half of its income was

from gifts and for its 1963-1964 season approximately 13 percent of its income was from gifts.

In 1963 the county assessor assessed plaintiff's land and improvements for a total of $5,515, and plaintiff paid the resulting tax of $590.70 under protest and commenced this action.

The basic question involved is whether plaintiff is a corporation organized and operated for charitable purposes within the meaning of section 1c of article XIII of the California Constitution and section 214 of the Revenue and Taxation Code. Secondly, there is involved the question as to whether plaintiff's property is irrevocably dedicated to charitable purposes and upon liquidation will inure to a charitable organization within the requirements of subdivision (6) of the code section.

Section 1c of article XIII provides in part: ''In addition to such exemptions as are now provided in this Constitution, the Legislature may exempt from taxation all or any portion of property used exclusively for religious, hospital or charitable purposes and owned by community chests, funds, foundations or corporations organized and operated for religious, hospital or charitable purposes. not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.''

▮ Unlike some other constitutional provisions dealing with tax exemption, this section is permissive and not self-executing. It merely authorizes the Legislature, without requiring it, to exempt the specified property. (*Sutter Hospital* v. *City of Sacramento*, 39 Cal.2d 33, 35-36 [244 P.2d 390].)

Section 214 of the Revenue and Taxation Code provides: ''Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

''. . . . . . . . . .

''(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes;

``.    .    .    .    .    .    .    .    .    .    .

"The exemption provided for herein shall be known as the 'welfare exemption.' "[1]

Preliminarily, it bears emphasis that the crucial term "charitable purposes" is used in both the constitutional provision authorizing exemption and the statutory provision granting the exemption. Thus the determination whether

---

[1] Section 214 of the Revenue and Taxation Code provides:

"Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit; provided, that in the case of hospitals, such organization shall not be deemed to be organized or operated for profit, if during the immediate preceding fiscal year the excess of operating revenues, exclusive of gifts, endowments and grants-in-aid, over operating expenses shall not have exceeded a sum equivalent to 10 percent of such operating expenses. As used herein, operating expenses shall include depreciation based on cost of replacement and amortization of, and interest on, indebtedness;

"(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual;

"(3) The property is used for the actual operation of the exempt activity;

"(4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession;

"(5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose;

"(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes;

"(7) The property, if used exclusively for scientific purposes, is used by a foundation or institution which, in addition to complying with the foregoing requirements for the exemption of charitable organizations in general, has been chartered by the Congress of the United States (except that this requirement shall not apply when the scientific purposes are medical research), and whose objects are the encouragement or conduct of scientific investigation, research and discovery for the benefit of the community at large.

"The exemption provided for herein shall be known as the 'welfare exemption.' This exemption shall be in addition to any other exemption now provided by law. This section shall not be construed to enlarge the college exemption. Property used exclusively for school purposes of less than collegiate grade and owned and operated by religious, hospital or charitable funds, foundations or corporations, which property and funds, foundations or corporations meet all of the requirements of this section, shall be deemed to be within the exemption provided for in Section 1c of

activities such as plaintiff's are included within that term will decide not only whether the Legislature has exempted property used for such activities but also whether the Legislature has power to exempt that class of property.

The proper construction of the word "charitable" as used in section 1c of article XIII was before this court in *Lundberg* v. *County of Alameda*, 46 Cal.2d 644 [298 P.2d 1]. The issue in that case was the validity of the 1951 amendment to section 214 of the Revenue and Taxation Code which added the language that property "used exclusively for school purposes of less than collegiate grade" owned by religious or charitable funds or corporations "shall be deemed to be within the exemption provided for in Section 1c of Article XIII of the Constitution of the State of California and this section." The question thus was whether section 1c authorized the Legislature to adopt such an exemption or, as the majority in *Lundberg* put it, "whether an educational purpose may be regarded as a charitable purpose within the meaning of section 1c of article XIII." (46 Cal.2d at p. 649.)

In concluding that the answer to the question was in the affirmative, the court pointed out that the argument that the word "charitable" as used in section 1c of article XIII should be narrowly construed had been previously rejected (*Y.M.C.A.* v. *County of Los Angeles*, 35 Cal.2d 760, 768 [221 P.2d 47]; *Fredericka Home for the Aged* v. *County of San Diego*, 35 Cal.2d 789 [221 P.2d 68]), and that the word "charitable" was to be broadly construed. The court pointed out that the wide and varied nature of the exemption ("religious, hospital, or charitable") indicates a purpose and intention to give the words used a broad rather than a strict meaning. (*Lundberg* v. *County of Alameda, supra*, 46 Cal.2d 644, 650-651; *Scripps etc. Hospital* v. *California Emp. Com.*, 24 Cal.2d 669, 676 [151 P.2d 109, 155 A.L.R. 360].) ▆ It would appear that provisions, such as section 1c of article XIII, granting power to the Legislature which do not restrict

Article XIII of the Constitution of the State of California and this section.

"Property used exclusively for nursery school purposes and owned and operated by religious, hospital or charitable funds, foundations or corporations, which property and funds, foundations or corporations meet all of the requirements of this section, shall be deemed to be within the exemption provided for in Section 1c of Article XIII of the Constitution of the State of California and this section."

individual rights should be broadly interpreted unless exceptional reasons appear for limiting the grant of power.

■ Defendants rely upon the rule that constitutional and statutory provisions *granting* exemption from property taxation must be strictly but reasonably construed. (E.g., *City & County of San Francisco* v. *County of San Mateo,* 17 Cal.2d 814, 817 [112 P.2d 595].) As already pointed out, however, section 1c of article XIII does not grant exemption but merely authorizes the Legislature to grant exemption, and we are satisfied that we should adhere to the established rule of construction for section 1c.

In *Lundberg, supra,* the court considered at some length the proper definition of the term "charitable purposes" as used in section 1c of article XIII. It was there pointed out that the term "charity" has been defined in a number of California cases as " 'a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons—either by bringing their hearts under the influence of education, or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' (*Estate of Halm,* 196 Cal. 778, 781-782 [239 P. 307] ; *Estate of Coleman,* 167 Cal. 212, 214 [138 P. 992, Ann.Cas. 1915C 682] ; *Estate of Sutro,* 155 Cal. 727, 736 [102 P. 920] ; *Estate of Lennon,* 152 Cal. 327, 329-330 [92 P. 870, 125 Am.St.Rep. 58, 14 Ann.Cas. 1024] ; *Estate of Merchant,* 143 Cal. 537, 543-544 [77 P. 475].) " (46 Cal.2d at p. 649.)

The court also pointed out that charity is not confined solely to the relief of the needy and destitute, but comprehends " 'as well activities which are humanitarian in nature and rendered for the general improvement and betterment of mankind, though the recipients of such benefits may be able to pay at least in part therefor. . . .' " (46 Cal.2d at p. 650; see also *Y.M.C.A.* v. *County of Los Angeles, supra,* 35 Cal.2d 760, 768.)

The court in *Lundberg* also relied upon the definition of charity set forth in *Estate of Henderson,* 17 Cal.2d 853, 857 [112 P.2d 605], where it was stated : " A bequest is charitable if : (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. . . . (2) The ultimate recipients constitute either the community as a whole or an unascertain-

able and indefinite portion thereof. . . . The charitable nature of an institution is determined on the same basis.''

It is apparent from the foregoing definitions that, where there is a gift to an indefinite portion of the community, the word ''charitable'' encompasses a wide range of activities beneficial to the community. It is settled that charitable purposes embrace educational purposes. (*Lundberg* v. *County of Alameda, supra,* 46 Cal.2d 644, 649-654; *Sarah Dix Hamlin School* v. *City & County of San Francisco,* 221 Cal.App.2d 336, 340 [34 Cal.Rptr. 376].) Plaintiff's corporate purposes as well as its activities show that it is dedicated to providing educational benefits with regard to dramatic art both to those who take part in its productions and to its audiences. Instruction in the dramatic arts is, of course, part of the curriculum of many of our schools, colleges, and universities.

Plaintiff's activities also provide entertainment for its audiences and an opportunity for those engaged in its productions to assert their individual creative talents. Such benefits to the community are of social interest to mankind and, when given to the community, are humanitarian in nature and contribute to the improvement and betterment of mankind. The activities are of a type often supported by government, as witness the opera houses, municipal auditoriums, and orchestras maintained or supported by our cities.

It has been stated that the ''common element of all charitable purposes is that they are designed to accomplish objects which are beneficial to the community.'' (Rest.2d Trusts, § 368, com. a.) We have held that gifts for the educational and recreational benefit of the community as a whole are for charitable purposes (*In re Los Angeles County Pioneer Society,* 40 Cal.2d 852, 859 [257 P.2d 1]), and in other jurisdictions it has been held that activities similar to those involved here are for charitable purposes. (*Nixon* v. *Brown* (1923) 46 Nev. 439 [214 P. 524, 530 et seq.]; *In re Shakespeare Memorial Trust* [1923] 2 Ch. 398, 401-402; see Rest.2d Trusts, § 374, com. f.; cf. *Community Drama Assn.* v. *Iowa State Tax Com.* (1961) 252 Iowa 854 [109 N.W.2d 23, 27].) In the light of the broad rule of construction to be applied and the broad definition given to the term ''charitable'' in our decisions, it is clear that the activities involved here for the furtherance of the dramatic arts come within the term ''charitable purposes'' as used in the Constitution.

It is obvious that, since the language of the first part of section 214 of the Revenue and Taxation Code is taken verbatim from section 1c of article XIII of the Constitution the term ''charitable purposes'' used in the code section must be given the same meaning as it is given in the Constitution unless a clear legislative intent to the contrary appears.

Defendants rely upon a number of code sections as assertedly showing an intent on the part of the Legislature to narrowly limit the exemption for property used for charitable purposes insofar as educational activities are concerned. Section 202 of the Revenue and Taxation Code, it is true, refers to free public libraries, free museums, and property used exclusively for public schools, but the introductory part of the section states that the ''exemption of the following property is as specified in Section 1 of Article XIII of the Constitution,'' and that constitutional provision, unlike section 1c before us, is self-executing. Furthermore section 202 was adopted prior to 1944, when section 1c was adopted, and thus before the Legislature had the broad powers conferred on it by the latter section. For the same reasons section 203 of the Revenue and Taxation Code which deals with the college exemption granted by section 1a of article XIII is of no help to defendants in urging that the Legislature has attempted to narrowly limit the exemption of property used for educational purposes.

The enactment of section 221 of the Revenue and Taxation Code in 1965 which establishes qualifications for nursery schools seeking exemption under section 214 of that code does not show a general intent to narrowly limit the exemption for property used for educational purposes but merely shows that the Legislature does not wish by granting a tax exemption to encourage nursery schools which do not meet those qualifications. Similarly, the provisions of sections 214.4 of the code, enacted in 1963, and 214.5, added in 1953, which establish standards for schools and colleges seeking exemption show only an intent not to encourage schools and colleges that fail to meet those standards. The Legislature may certainly determine that so-called ''diploma mills,'' although providing some educational benefits, also involve a number of evils warranting restrictions, and legislative action to eliminate or discourage such institutions should not be viewed as reflecting an intent to discourage all educational endeavor which is not carried on in accredited schools and colleges.

We conclude that the statutory provisions relied upon by the county do not establish that the Legislature has intended to narrowly limit the word "charitable" insofar as educational activities are concerned.

Defendants urge that an interpretation of section 214 of the Revenue and Taxation Code permitting the exemption of plaintiff's property would exempt almost all property owned by nonprofit corporations, since some educational aspect may be found in almost any endeavor. However, the exemption is granted for charitable purposes, not merely for educational purposes, and, as we have seen, charitable activity must benefit the community as a whole or an unascertainable and indefinite portion thereof. Thus the many nonprofit corporations and organizations which exist primarily for the benefit of their shareholders would not qualify for the exemption. Moreover, the various subdivisions of section 214 of the Revenue and Taxation Code (see fn. 1) also will preclude a substantial number of nonprofit corporations and organizations from qualifying.

With regard to the requirement of irrevocable dedication in subdivision (6) of section 214, defendants urge that there has been no proper dedication because the articles of incorporation of plaintiff provide that upon dissolution the assets shall be distributed to any charitable "or civic institution or organization in the sole discretion of the directors" and because a civic institution or organization may not come within the classification of "a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes" as required by the subdivision.

In considering whether there has been compliance with the requirement of irrevocable dedication, the critical factor is the corporation's powers with respect to its properties, and these powers must ordinarily be ascertained from its articles of incorporation. (*Pacific Home* v. *County of Los Angeles,* 41 Cal.2d 844, 849 [264 P.2d 539]; *Pasadena Hospital Assn.* v. *County of Los Angeles,* 35 Cal.2d 779, 786 [221 P.2d 62].)

*Pacific Home* v. *County of Los Angeles, supra,* 41 Cal.2d 844, 849 et seq., is controlling. In that case the articles reasonably construed as a whole showed that the corporation was organized for charitable purposes. The articles also provided that in the event of dissolution the assets of the corporation should pass to a named successor corporation

which was organized both for exempt and nonexempt purposes. It was held that the assets of the charitable corporation were deemed to be impressed with a charitable trust by virtue of the declaration of the corporate purpose, that neither the corporation nor its successor could legally divert its assets, that subdivision (6) of section 214 of the Revenue and Taxation Code does not require that the successor corporation be organized exclusively for charitable purposes, and that the successor corporation would be required to continue to devote the predecessor's assets to charitable purposes under the trust theretofore impressed upon such assets. On these grounds the court concluded that there was compliance with subdivision (6).

The *Pacific Home* decision was followed in *Solheim Lutheran Home* v. *County of Los Angeles,* 152 Cal.App.2d 775, 778 [313 P.2d 185], and *House of Rest* v. *County of Los Angeles,* 151 Cal.App.2d 523, 528-531 [312 P.2d 392].

Here as in *Pacific Home* the corporate purposes made it abundantly clear that plaintiff's assets are impressed with a charitable trust. Accordingly any successor would be required to devote the assets to charitable purposes. (Corp. Code, §§ 9505, 10207; *In re Los Angeles County Pioneer Society, supra,* 40 Cal.2d 852, 861 et seq.) For this reason it is immaterial that in *Pacific Home* the successor corporation was named specifically whereas here the successor is merely identified generally and is not limited to corporations engaging exclusively in exempt acitivities.

The conclusion that there has been compliance with subdivision (6) of section 214 of the Revenue and Taxation Code makes it unnecessary to consider plaintiff's contention that defendants stipulated at the trial that there was compliance with the section.

The judgment is reversed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Peek, J.,* concurred.

Respondents' petition for a rehearing was denied March 22, 1967.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.