[Civ. No. 22293. Fourth Dist., Div. One. Nov. 7, 1980.]

JOE ALCOSER et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

COUNSEL

Strauss, Kissane, Davis & Hargrove and Richard E. L. Strauss for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Neal J. Gobar, Deputy Attorney General, Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Arlene Prater, Deputy County Counsel, for Defendants and Respondents.

OPINION

WORK, J.—The San Diego County Construction Laborers Training and Retraining Trust (The Trust) claimed a welfare property tax exemption[1] for real and personal property used in operating a vocational training school to train and retrain persons in skills specifically utilized by the construction industry. It contends such use is exclusively charitable.

---

[1]Revenue and Taxation Code section 214 reads, in pertinent part: "Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for re-

The trial court found this "charity" began and ended at home, did not benefit the community in general, and denied the exemption. We affirm.

## FACTUAL BACKGROUND

The facts are not in dispute.[2] The Trust was created by Laborers' International Union of North America, Local No. 89 and employers who are parties to a construction collective bargaining agreement, to receive and administer *employer* contributions required by the agreement (Master Labor Agreement of San Diego County). Its stated purpose is to defray the cost of "prevocational, vocational, advancement training, retraining and training programs for work under jurisdiction of the union." The Trust is administered by six trustees selected by the union and employer parties.

In June 1973, The Trust purchased property which is the subject of this litigation. Since mid-1974, it has operated a six-week training school to instruct unskilled laborers in current basic construction techniques. A one-week advanced construction course is restricted to applicants who have been union members for a year or more. Admission to the basic course in order of priority is restricted to (1) union members; (2) persons requested by unionized employers; (3) veterans; (4) persons over 19; (5) 18 year olds.

Since 1975, The Trust has used placement directors in an attempt to obtain jobs for graduates exclusively with employers who contribute to the training fund and are parties to The Trust. *No effort is made to assist graduates in obtaining jobs with nonunion contractors.* In addition, The Trust pays $150 to each graduate who presents himself to the union hiring office once a week for at least six weeks following graduation and accepts any union job offered. Statistics showing the status and numbers of trainees and graduates by ethnic background and union affiliation were submitted, along with placement information.

---

ligious, hospital, scientific, or charitable purposes is exempt from taxation if:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(4)   The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession . . . ."

[2] The case was tried on a complete stipulation of facts and issues, together with all exhibits.

I

The Trust contends its training school is operated for the benefit of the general community or an "unascertainable and indefinite portion thereof" thus qualifying for the welfare exemption granted under Revenue and Taxation Code section 214 to property used exclusively for charitable purposes.

Educational programs qualify as charitable where they benefit the community as a whole. (*Lundberg* v. *County of Alameda* (1956) 46 Cal.2d 644, 649-654 [298 P.2d 1].) However, the exemption is not granted because the program is educational, it is because specific educational programs are charitable. (*Stockton Civic Theatre* v. *Board of Supervisors* (1967) 66 Cal.2d 13, 22 [56 Cal.Rptr. 658, 423 P.2d 810].)

In no event is an exemption permitted where the property is used to benefit any owner, trustee or other person in the more advantageous pursuit of their business or profession. (Rev. & Tax. Code, § 214, subd. (4).) For this reason exemption was disallowed to a vocational school in mortuary science operated by the funeral service industry. (*California College of Mortuary Science* v. *County of Los Angeles* (1972) 23 Cal. App.3d 702, 705 [100 Cal.Rptr. 558].)[3]

The Trust claims the primary beneficiary of its program is the general public which benefits by a more efficient construction industry and by being relieved from burdens of supporting members of the hard-core unemployed.

In support of these contentions they rely on the trust instrument containing a self-serving characterization of itself as charitable; 14 months

---

[3]"The taxpayer's reliance is misplaced. In *Stockton* our Supreme Court...indicated that to qualify for exemption under section 214, the 'charitable activity must benefit the community as a whole or an unascertainable and indefinite portion thereof.' (P. 22.).... The taxpayer's fine and apparently locally unique training in embalming and in every phase of funeral service does not benefit primarily the community as a whole or an unascertainable and indefinite portion thereof, but benefits instead primarily a definite segment thereof, namely, the funeral service industry by providing for it competently trained personnel. [Citation.] This special and limited benefit is characteristic of vocational schools generally." (*California College of Mortuary Science* v. *County of Los Angeles, supra*, 23 Cal.App.3d 702, 705.)

of federal funding;[4] and certain statistical evidence indicating blacks and Chicanos have benefited from the training school to a greater degree than other segments of the community. Since a significant percentage of unskilled persons training to become construction laborers were Chicano and black, and the construction industry is a significant factor in the general economy,[5] The Trust argues it qualifies for the exemption.

■ The trial court found no evidence the school was organized to train the hard-core unemployed or the active recruitment of such persons. It concluded The Trust was primarily intended to and did benefit its union and employer parties and not the community in general. The evidence substantially supports the finding and conclusion. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 [157 Cal.Rptr. 482, 598 P.2d 452].)

The evidence shows no person was given priority for admission to training because of his being unemployed or of a background which could be categorized as "hard-core unemployable." Even during the period The Trust received federal funds its admission priorities were to union members, those referred by unionized employers and veterans. Although RETC set certain training goals based on admissions of certain categories of applicants, no evidence was introduced to show compliance. On graduation union members received assistance in job placement, nonunion members were not eligible for this service. Placements were arranged only with employers who were a party to The Trust. The record indicates The Trust was oblivious to the needs of the hard-core unemployed but most sensitive to goals of the union and employers with whom it held collective bargaining agreements.

[4]The Regional Employment and Training Consortium was created by a "joint powers agreement" between the City and County of San Diego pursuant to the Comprehensive Employment Training Act of 1973, as amended (29 U.S.C.A. § 801 et seq.), commonly known as "CETA." The purpose of CETA and RETC was to provide services to the unemployed, underemployed and economically disadvantaged, for the primary objective of providing training resulting in permanent, unsubsidized employment, through the use of Department of Labor funds authorized by CETA.

The Trust posits: the fact that the procedure used by it was acceptable to RETC with its aforestated purpose is strong evidence the trainees, and through them the public, in general were the primary beneficiaries of the training program. (Cf. *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 239 [138 Cal.Rptr. 634].)

[5]In 1977 and 1978 wages paid to workers in the construction industry comprised 11.5 percent and 11.28 percent respectively of total wages paid in San Diego County, and employed an estimated 34,200 persons per month.

We find the school's impact on the general community is peripheral to the true beneficial purpose of the training and job placement activities performed. While the community indirect benefit may be broader in scope than received by educating budding morticians, it fails the test of *Stockton Civic Theatre* v. *Board of Supervisors, supra*, 66 Cal.2d 13, 22.

## II

■ The court refused, as hearsay, two letters offered in evidence by The Trust as official records in support of its claim. Exhibit 13, dated May 30, 1974, from the District Director of Internal Revenue Service confirmed its federal income and excise tax exemption under Internal Revenue Code section 501(c)(3); exhibit 14, dated June 25, 1974, from a supervisor of the Franchise Tax Board confirmed its exemption from state income tax under Revenue and Taxation Code section 23701d.

Regardless of the correctness of the court's ruling no prejudice resulted. The status conferred could only have been based on the self-serving tax-exempt purpose language of the trust agreement since the school had not then begun full operation. Further, no evidence was submitted to show what relevance the income tax exemptions given have to the right to the property tax exemption requested here. If relevant at all, the letters are of insignificant evidentiary weight and would not affect the result of this case.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.