[Civ. No. 61600. Second Dist., Div. Three. Feb. 26, 1982.]

ATLANTIC RICHFIELD COMPANY et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**COUNSEL**

John H. Larson, County Counsel, Lawrence B. Launer, Deputy County Counsel, Robert W. Parkin, City Attorney, and Robert G. Austin, Deputy City Attorney, for Defendants and Appellants.

Hanna & Morton, Edward S. Renwick and Cynthia L. Burch for Plaintiffs and Respondents.

OPINION

LUI, J.—

### Summary of the Case

Respondent oil companies brought an action in the Superior Court of Los Angeles County seeking to recover property taxes paid under protest. This matter was before Division One of this court in *Atlantic Richfield Co. v. County of Los Angeles* (1977) 68 Cal.App.3d 105 [137 Cal.Rptr. 84] (*ARCO II*). Division One reversed the trial court's determination that Revenue and Taxation Code sections 107.2 and 107.3[1] were unconstitutional. Upon remand to the trial court, the sole issue tried and determined was whether sections 107.2 and 107.3 were applicable to the 1967-1968 tax year. The trial court determined that these sections were applicable to the 1967-1968 tax year and gave judgment to the respondents for refund of the portion of the taxes paid under protest commencing with the 1967-1968 tax year together with accrued interest. Appellants' appeal contends that the Legislature did not intend that these sections be applicable to the 1967-1968 tax year, but if applicable, the refund of such taxes which had become vested would constitute an invalid gift of public funds.

---

[1]Hereinafter, all references are to the Revenue and Taxation Code unless otherwise indicated.

Section 107.2 provides as follows: "The full cash value of leasehold estates in exempt property for the production of gas, petroleum and other hydrocarbon substances from beneath the surface of the earth, and all other taxable rights to produce gas, petroleum and other hydrocarbon substances from exempt property (all of which rights are hereinafter in this section referred to as 'such oil and gas interests'), is the value of such oil and gas interests exclusive of the value of any royalties or other rights to share in production from exempt property owned by any tax-exempt entity, whether receivable in money or property and whether measured by or based upon production or income or both. [¶] This section applies to such oil and gas interests created prior to the date on which the decision in De Luz Homes, Inc. v. County of San Diego (1955) 45 Cal.2d 546, became final. This section does not, however, apply to any of such oil and gas interests created prior to such date which have been after such date or are hereafter extended or renewed, unless such extension or renewal is pursuant to authority in a contract, lease, statute, regulation, city charter, ordinance, or other source, which authority permits no reduction of the rate of royalty or other right to share in production on grounds of an increase in the assessed valuation of such oil and gas interest. Moreover, this section does not apply to any of such oil and gas interests if the rate of royalties or other right to share in production has, prior to the effective date of this section, been reduced to adjust for the fact that certain assessors have valued such oil and gas interests without excluding the value of said royalties or other rights to share in production." (Fn. omitted.)

Section 107.3 provides as follows: "The full cash value of leasehold estates in exempt

*Facts*

Before 1963, assessors in California assessed the oil lessee's possessory interest in property leased from a tax-exempt lessor, such as appellants, by estimating the present value of recoverable hydrocarbons and deducting from that value the estimated present value of the costs of recovery and the estimated present value of the amounts payable by the lessee to the lessor. Beginning with the 1963-1964 tax year, the assessors changed their assessment practices, as to the method of valuing oil and gas possessory interests, by no longer deducting from the estimated present value of recoverable hydrocarbons the estimated present value of payments due lessor from lessee. The new assessment method resulted in an increase in the assessed value of respondents' oil rights and a corresponding increase in their property taxes.

Atlantic Richfield Company and Humble Oil & Refining Company filed actions in the superior court challenging the validity of the changed assessment practice and the superior court sustained the new method of assessment in all respects pertinent hereto. This action was appealed and ultimately decided by our Supreme Court in *Atlantic Oil Co. v. County of Los Angeles* (1968) 69 Cal.2d 585 [72 Cal.Rptr. 886, 446 P.2d 1006] (*ARCO I*).

---

property for the production of gas, petroleum and other hydrocarbon substances from beneath the surface of the earth and all other taxable rights to produce gas, petroleum and other hydrocarbon substances from exempt property (all of which rights are hereinafter in this section referred to as 'such oil and gas interests'), is the value of such oil and gas interests, exclusive of the value of any royalties or other rights to share in production from exempt property owned by any tax-exempt entity, whether receivable in money or property and whether measured by or based upon production or income or both.

"This section applies to: [¶] (a) Such oil and gas interests created prior to the date on which the decision in De Luz Homes, Inc. v. County of San Diego (1955) 45 Cal.2d 546, became final to which Section 107.2 of this code does not apply because said interests were extended or renewed on or before July 26, 1963. [¶] (b) Such oil and gas interests created on or after the date on which said decision became final and on or before July 26, 1963. [¶] This section does not, however, apply to any of such oil and gas interests extended or renewed after July 26, 1963, unless such extension or renewal is pursuant to authority in a contract, lease, statute, regulation, city charter, ordinance or other source which authority permits no reduction of the rate of royalty or other right to share in production upon the ground of an increase in the assessed valuation of such oil and gas interest. Moreover, this section does not apply to any of such oil and gas interests if the rate of royalties or other right to share in production has, prior to the effective date of this section, been reduced to adjust for the fact that certain assessors have valued such oil and gas interests without excluding the value of said royalties or other rights to share in production."

While *ARCO I* was pending in the Court of Appeal, the Legislature in 1967 enacted sections 107.2 and 107.3 to mitigate the hardship which the Legislature anticipated might result from the decision in *ARCO I*. The legislative enactment of sections 107.2 and 107.3, Statutes 1967, chapter 1684, section 3, states: "It is not the intent of the Legislature in adopting this act to declare the law with respect to assessment years *prior to the assessment year commencing March 6, 1967*, or to declare the law with respect to oil and gas interests not expressly covered by Section 1 or Section 2 of this act. Accordingly, neither the adoption of this act nor anything in this act shall be construed to declare or affect in any way the law with respect to oil and gas interests or assessment years not expressly covered by this act; and, without limiting the generality of the foregoing, nothing in this act shall be construed to affect the litigation now pending in several counties concerning the valuation, assessment and taxation of oil and gas interests in exempt property for assessment years *prior to the 1967-1968 assessment year* or the rules of law applicable to such litigation." (Italics added.)

Statutes 1967, chapter 1684, section 4, states: "The Legislature finds and declares that prior to 1963 all assessors in California uniformly excluded or deducted the value of government-owned royalty or similar interests when assessing privately owned oil and gas interests in government lands. *In 1963 certain assessors reversed this longstanding uniform method of assessment and such oil and gas interests are now generally assessed without such exclusion or deduction. This unexpected change has resulted in severe hardship similar to the hardship suffered by lessees of the surface of government land as a result of the decision in De Luz Homes, Inc. v. County of San Diego (1955) 45 Cal.2d 546.* In 1957 the Legislature relieved the surface lessees from such hardship by the enactment of Section 107.1 of the Revenue and Taxation Code, but excluded oil and gas interests from such relief because the Legislature, consistent with the understanding of the oil industry, the state and the assessors, believed that the rule of the De Luz Homes case was not applicable to oil and gas interests. *Now that assessors have changed their prior method of assessment, the Legislature finds, declares and intends that similar relief should be extended to oil and gas interests by this act.*" (Italics added.)

In 1968, the Supreme Court rendered its decision in *ARCO I* which essentially affirmed the trial court's judgment upholding the validity of the changed assessment practice. The holding in *ARCO I* was that the

incorporeal hereditaments, the right to receive royalties, held by an exempt lessor was not an interest in realty but rather was inseparable for the purpose of ad valorem taxation from the profit a prendre which constituted the taxpayers' possessory interest. (*ARCO I, supra,* 69 Cal.2d at p. 599.) Our Supreme Court, accordingly, applied the *De Luz* rule[2] to possessory interests in oil and gas interests in realty. (69 Cal.2d at pp. 599-601.)

Although the Legislature enacted sections 107.2 and 107.3 which became effective November 8, 1967, the various county assessors took the position that these sections were unconstitutional and continued to make assessments in oil and gas interest as though sections 107.2 and 107.3 were not in existence. (Finding No. 18.) Respondents thereafter exhausted their administrative remedies and brought the within action in the superior court seeking recovery of taxes paid under protest pursuant to the then applicable sections of the Revenue and Taxation Code.

Subsequently, counsel briefed the issues for the trial court, a nonjury trial was conducted on July 27, 1979, and the matter submitted for the trial court's decision. On October 3, 1979, the court issued a letter to counsel in lieu of a memorandum opinion announcing the trial court's intended decision.

The trial court filed its findings of fact and conclusions of law on January 23, 1980. The pertinent findings of fact are as follows:

Finding No. 22: "The parties have agreed that all leases in evidence are governed by Revenue and Taxation Code §§ 107.2 and 107.3 and have agreed as to the rate of interest any refunds are to earn. Therefore, the only issue remaining for decision is whether Revenue & Taxation Code §§ 107.2 and 107.3 may constitutionally be applied to the tax year 1967-68."

---

[2]In *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 573 [290 P.2d 544], the court held, among other things, that the value of a leasehold estate in tax exempt property may not be computed by deducting the present value of the lessee's anticipated annual charges for operating expenses, taxes, rent, and amortization of money invested in the leasehold, together with interest thereon, from anticipated annual gross income, so that the difference, when capitalized and reduced to the "proper" ratio of assessment to market values may be deemed the value of the possessory interest. The deduction of amortization does not conform either to the statutory standard of value or to the accepted principles of capitalization.

Finding No. 23: "The legislature intended Revenue & Taxation Code §§ 107.2 and 107.3 to apply to taxes which became a lien on March 6, 1967 as well as taxes which became a lien on subsequent lien dates."

Finding No. 24: "Revenue and Taxation Code §§ 107.2 and 107.3 were enacted by 1967, Stats. Ch. 1684. In Section 4 of that Act, the legislature declared its concern that all members of plaintiffs' class had suffered 'severe hardship' as a result of the unexpected change in assessment practice described above in Finding 10 [no longer deducting lease payments due lessors] and demonstrated its intent to relieve plaintiffs' class from that extreme hardship. The court finds that the legislature concluded applying §§ 107.2 and 107.3 to the tax year 1967-68, rather than delaying their application until the following year, helped relieve against the said hardship and the court finds that it is reasonable to conceive the legislature found this to be a valid public purpose justifying application of Revenue & Taxation Code §§ 107.2 and 107.3 to the 1967-68 taxes, even though the taxes had become a lien on March 6, 1967."

Finding No. 25: "It is also reasonable to conceive that the legislature applied Revenue & Taxation Code §§ 107.2 and 107.3 to the taxes becoming a lien on March 6, 1967 rather than waiting until the following year because it concluded this would help avoid hardship in the nature of premature abandonment of oil producing properties, would help avoid hardships by promoting the maximum ultimate recovery of oil and gas under leases in which the State of California and other exempt entities owned royalty interests, and that these were valid public purposes justifying said application."

In findings No. 26 to 29, the court determined the amount of taxes in question had the assessors applied sections 107.2 and 107.3 to the 1967-1968 and 1968-1969 assessments and in findings No. 30 and 31, determined the amount and rate of interest applicable to any judgment against the appellant county and municipalities.

Other pertinent findings are as follows

Finding No. 32: "In adopting §§ 107.2 and 107.3, the legislature did not expressly declare that said sections were to operate retroactively to affect taxes vested on March 6, 1967."

Finding No. 33: "The taxes in question for the year 1967-68 were fully, completely and unconditionally vested on March 6, 1967."

Finding No. 34: "Sections 107.2 and 107.3 when applied to the tax year 1967-68 do not operate to constitute an unconstitutional gift of public funds in violation of Article XVI, Section 6."

Judgment was filed in this action on January 23, 1980. In said judgment, the trial court declares "that Revenue & Taxation Code §§ 107.2 and 107.3 were intended to apply to the tax years 1967-68 and thereafter, that they are constitutional even when applied to the tax year 1967-68, and that the value of the royalty interests or other rights to share in production owned by the tax-exempt entities described in the subject complaints should have been deducted or excluded when plaintiffs' mineral rights were assessed for the years 1967-68 and 1968-69." The judgment also set forth the amount of taxes recoverable by each of the respondents against the various appellants, together with interest.

Appellants filed a timely notice of appeal from the judgment entered January 23, 1980.

### Issues on Appeal

The issues on appeal are as follows:

1. Did the Legislature intend sections 107.2 and 107.3 to apply to the 1967-1968 tax year?

2. Assuming that the Legislature intended sections 107.2 and 107.3 to apply to the 1967-1968 tax year, does the application of those sections to the tax year 1967-1968 constitute an invalid gift of public funds?

### Discussion

### I

### The Legislature Intended Sections 107.2 and 107.3 to Apply to the 1967-1968 Tax Year

■ As indicated in the above quoted finding of fact No. 25, the trial court found that the Legislature intended that sections 107.2 and

107.3 be applicable to the 1967-1968 tax year and included in its judgment a declaration of law to this effect. Appellants challenge the trial court's declaration asserting the absence of any express declaration of the Legislature which can support the trial court's determination. We do not agree with appellants' contention. The above quoted language from chapter 1684, Statutes 1967, section 3, indicates that the Legislature did not intend in enacting sections 107.2 and 107.3 "to declare the law with respect to assessment years prior to the assessment year commencing March 6, 1967," and recognizes the existence of "litigation now pending in several counties concerning the valuation, assessment and taxation of oil and gas interests in exempt property for assessment years prior to 1967-1968 assessment year or the rules of law applicable to such litigation."

It is obvious to us that the Legislature did not intend to affect assessment years beginning prior to March 6, 1967, by the language of the enactment. The date of March 6, 1967, is of significance because section 2192 (subsequently modified eff. Jan. 1, 1968), then made the lien date the first Monday of March, which in 1967 was March 6, and section 118 defines the "assessment year" as commencing with the lien date and ending immediately prior to the succeeding lien date. It is equally obvious that the Legislature was aware of the existence of litigation in the courts concerning assessment practices such as *ARCO I* and did not wish to affect the outcome of such litigation between 1963, when the questioned practices changed, and 1967.

We are bound by the fundamental rule of legislative construction requiring an interpretation of the statute to effectuate legislative intent. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 686-687 [91 Cal. Rptr. 585, 478 P.2d 17].) Our reading of the above enactment compels a conclusion that the Legislature intended sections 107.2 and 107.3 to be applicable to the 1967-1968 tax year.

II

*The Legislature's Decision to Apply Sections 107.2 and 107.3 to the 1967-1968 Tax Year Is Supported by a Valid Public Purpose*

The crucial issue in this appeal is whether appellants' assertion that the retrospective application of these sections to the 1967-1968 tax

year would violate the constitutional prohibition against making a gift of public funds is correct. (Cal. Const., art. XVI, § 6.)[3]

Appellants contend that "any retrospective application of a statute that results in a surrender or remission, in whole or in part, of taxes which have vested cannot be constitutionally done, for to do so would authorize an unconstitutional gift of public funds." The trial court properly determined the taxes had vested as of the lien date, in its finding No. 32. The 1967-1968 taxes vested as of the lien date of March 6, 1967, pursuant to section 2192 and respondents' obligation to pay these taxes accrued as of this date when the lien attached. (*State of California* v. *Clyne* (1959) 175 Cal.App.2d 204, 209 [345 P.2d 474].) Appellants' contention that the vesting of the taxes is determinative of the issue as to whether a retrospective application of the statute is proper is incorrect. *Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990 [141 Cal.Rptr. 731], holds to the contrary. In *Schettler,* vested ad valorem taxes imposed on imported inventory were remitted to taxpayers by the prospective application of section 226.[4] Applying this section enacted on July 23, 1976, and amended September 20, 1976 prospectively, *Schettler* held the taxes vested as of March 1, 1976, the lien date for 1976-1977 taxes, could be remitted by legislation enacted subsequent to the lien date. The court in *Schettler* stated: "Of course, we have no quarrel with respondent's argument that the tax lien is a vested right of the taxing body; that the tax lien for taxes attaches on the first day of March [under the present § 2192] preceding the fiscal year for which the taxes are levied (§ 2192; *Doctors General Hospital* v. *County of Santa Clara* (1961) 188 Cal.App.2d 280, 284 [10 Cal.Rptr. 423]); and that as a general proposition the Legislature cannot by a subsequent act increase or decrease the rate, remit the tax or in any way surrender, impair or limit rights that have become fixed and vested. [Citation.] *To this general rule, however, there is a well recognized exception. It has been consistently held that expenditures of public funds*

---

[3]This section provides in pertinent part that: "The Legislature shall have no power ... to make any gift or authorize the making of any gift, of any public money ... to any individual, municipal or other corporation whatever; ..." This provision was formerly contained in article XIII, section 25.

[4]Section 226 reads as follows: "The validity of any ad valorem property tax assessment on imported goods, heretofore or hereafter imposed, levied or collected with respect to tax years prior to the 1976-1977 tax year, shall be determined pursuant to statutory and case law in effect prior to the decision in Michelin v. Wages (1976) 46 L.Ed.2d 495, except that for any assessment made prior to January 14, 1976, the court may, if the circumstances warrant and the taxing authority demonstrates that it would be equitable to do so, follow the decision in Michelin v. Wages."

*or property which involve a benefit to private persons are not gifts within the meaning of the constitutional prohibition if those funds are expended for a public purpose* [citations]. ... '[W]here the question arises as to whether or not a proposed application of public funds is to be deemed a gift within the meaning of that term as used in the constitution, *the primary and fundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose* within the jurisdiction of the appropriating board or body, *it is not*, generally speaking, to be *regarded as a gift.*' (Italics added. Accord: *Doctors General Hospital v. County of Santa Clara, supra*, 188 Cal.App.2d at p. 286.) It is likewise settled that if a public purpose is served by the expenditure of public funds, the constitutional prohibition is not violated even though there may be incidental benefits to private persons [citations]. Even more importantly, *under an unbroken line of cases the determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis* [citations]." (*Schettler, supra*, 74 Cal.App.3d 990, 1003-1004.) (Initial and latter italics added.) In *Crest Brokerage Co. v. County of Los Angeles* (1979) 91 Cal.App.3d 635 [154 Cal.Rptr. 338], this rule in *Schettler* was applied by Division One of this District.

As noted above, the legislative enactment, Statutes 1967, chapter 1684, section 4, contains the Legislature's statement of policy in regards to these sections. The Legislature declared that the unexpected change in assessment practices "has resulted in severe hardship similar to the hardship suffered by lessees of the surface of government land as a result of the decision in De Luz Homes, Inc. ...."

While not stated in the enactment, and as respondents urge, the Legislature could well have reasoned that the long run energy production in California would benefit from the immediate application of sections 107.2 and 107.3 to the 1967-1968 tax year because such an application would promote maximum recovery of oil and gas resources, including production from marginal wells.[5]

---

[5]The public policy of California in maximizing ultimate recovery of oil and gas is contained in various legislative enactments. For example, see Public Resources Code section 6830.1, subdivision (a), which states "[t]hat the people of the State of California have a direct and primary interest in assuring the production of the optimum quantities of oil and gas from lands owned by the state, and that a minimum of oil and gas be left wasted and unrecovered in such lands." This was one of the statutes present-

Appellants contend that the gift of public funds cannot be justified on the public purpose exception where the Legislature does not set forth a clear and specific public purpose, thus leaving such purpose up to speculation and conjecture. In the above quoted enactment, section 4, the Legislature set forth its reason, namely, to relieve "hardship." In *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678 [91 Cal.Rptr. 585, 478 P.2d 17], our Supreme Court retroactively applied the then Probate Code section 228 to prevent escheatment of a portion of an estate despite the fact that there was *no* statement of statutory intent or public purpose contained in the enactment. (See Stats. 1969, ch. 856, § 1, eff. Nov. 10, 1969.) The court in *Mannheim* stated "it is well established that a relinquishment of rights by the state—if made for a public purpose—will not violate the constitutional prohibition. *The concept of public purpose has been liberally construed by the courts, and the Legislature's determination will be upheld unless it is totally arbitrary.* [Citations.] The fact that individuals may be incidentally benefited is irrelevant. [¶] In *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210 [187 P.2d 702], for example, we upheld a statute which retroactively cut off the state's right to sue employers for delinquent unemployment insurance contributions on the ground that there was a public benefit in having enforcement officers devote their time to fresh, rather than stale, claims. In *Gartner* v. *Roth, supra*, 26 Cal.2d 184 [157 P.2d 361], the retroactive application of a statute permitting redemption of tax-deeded property was held not to constitute a gift of public funds, in part because the return of property to the tax rolls was considered a legitimate public purpose. And in *County of Alameda* v. *Janssen, supra*, 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141], no constitutional infirmity was found in a statute which released preexisting public liens on the property of indigents receiving public assistance. [¶] In the present case the Legislature has determined that escheats are to be avoided wherever possible. Such a conclusion cannot be considered arbitrary, for the courts have long held that escheats are not favored by the law. [Citations.] *It was certainly within legislative discretion to effectuate this policy determination by the means chosen, despite some incidental benefit to certain individuals.*" (*Mannheim, supra*, 3 Cal.3d 678, 690-691.) (Italics added.)

---

ed as part of the background and legislative history which the trial court heard and considered.

It is obvious that the deduction of estimated lease payments in computing the tax assessment base reduces this base and thereby decreases the amount of taxes which would be paid by respondents. This would increase the amount of net revenues to the respondents and thereby encourage the continued operation of wells, especially marginal wells.

Appellants next contend that there must be a particular public purpose fulfilled by the return of such funds which would benefit the transferring governmental entity, relying on the decision of *Golden Gate Bridge etc. Dist.* v. *Luehring* (1970) 4 Cal.App.3d 204 [84 Cal.Rptr. 291]. In *Golden Gate*, the Court of Appeal for the First District considered the propriety of legislation which would transfer surplus funds from the Golden Gate Bridge and Highway District to several counties included within the district (Marin, Sonoma, Del Norte, San Francisco, Napa and Mendocino). Between 1929 and 1931, the district levied taxes on property owners of the district to meet the preliminary expenses needed to float a bond issue to construct the bridge. After years of operation, the district had accumulated surplus funds and the Legislature had directed the district to develop a plan for the future of the bridge. Legislation which had been enacted by the 1968 statutes became effective which, after making a provision for retirement of the bond indebtedness, provided for the reimbursement of over $2 million to the counties within the district. This appeal challenged the return of the funds to the respective counties as a violation of article XIII, section 25, of the California Constitution as an improper gift of public funds. The First District held that it was improper to permit the diversion of a portion of the revenues from the district into the general fund of the counties under said constitutional provision. *Golden Gate* also held it was improper "to take money from one group of citizens—the tollpayers—and apply it to the benefit of another group—the county taxpayers. Bridge users might well object to this idea, on the ground that the district should continue to be serviceable to its original purpose of 'bridging ... the Golden Gate' and for that purpose should apply its revenues to the improvement of transportation across the Golden Gate." (*Id.*, 4 Cal.App. 3d at pp. 214-215.)

The decision in *Golden Gate* is distinguishable from the facts presented in the instant case. The refund of taxes is to the very taxpayers who made the original payment. Furthermore, we are not dealing with the transfer of funds from one governmental entity to another governmental entity wherein we must scrutinize the existence of any purpose or benefit resulting from such a transfer.

Appellants' final contention is that the public purpose exception is inapplicable where the Legislature has not required that the remitted funds be used for a specific or particular purpose and that in the instant case funds shall be returned to respondents "without any limitation or direction as to the use of such funds." Appellants cite no authority other

than *Golden Gate* to support its contention and we find no statutory or decisional law to support this proposition. In fact, in *Mannheim, supra*, 3 Cal.3d 678, the proceeds of the estate which would have escheated obviously were returned without any restriction or limitation to the heirs of the estate, and in *Schettler, supra*, 74 Cal.App.3d 990, remitted taxes to the importers were returned without any restriction or limitation as to their use. We find appellants' final contention to be without merit.

Based on the authorities cited above, we conclude that the Legislature supplied a sufficient reason to support its conclusion that the retrospective application of sections 107.2 and 107.3 to the 1967-1968 tax year would serve the purpose of relieving hardship. A relief of hardship to a taxpayer is a valid public purpose, and the determination of the Legislature in this regard has the requisite reasonable basis which is within its prerogative and to which we have no quarrel.

The judgment is affirmed.

Klein, P. J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 22, 1982. Mosk, J., was of the opinion that the petition should be granted.