[Civ. No. 68154. Second Dist., Div. Seven. Oct. 31, 1983.]

J. PAUL GETTY MUSEUM, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

## Counsel

John H. Larson, County Counsel, and Edward G. Pozorski, Deputy County Counsel, for Defendants and Appellants.

Musick, Peeler & Garrett, Kenneth A. Holland and John H. Bauman for Plaintiff and Respondent.

## Opinion

**PAEZ, J.**\*—The County of Los Angeles and the City of Los Angeles (County) appeal from a summary judgment entered in favor of respondent the J. Paul Getty Museum (Getty Museum). The judgment awarded the Getty Museum a refund of $180,351.05 in property tax for the 1973-1974 fiscal year.

This appeal involves the applicability of the "welfare exemption" from property tax (Rev. & Tax. Code, § 214)[1] to the Getty Museum's main building during the time of its construction. Specifically, we must decide whether a nonprofit owner of property intended for use as a museum is precluded from claiming the welfare exemption when the free museum exemption under article XIII, section 3, subdivision (d) of the California Constitution is not yet available. We resolve this issue in favor of the Getty Museum and further hold that it satisfied all of the conditions for claiming the welfare exemption to exempt its new building from taxation for the 1973-1974 fiscal year. Accordingly, we will affirm the judgment.

### Facts

The Getty Museum is a nonprofit charitable trust, established by a trust indenture in 1953 by its founder J. Paul Getty. (See Ed. Code, § 21140 et seq.) The purpose of the trust is to maintain and perpetuate a museum, gallery of art and library for the diffusion of artistic and general knowledge. When the Getty Museum was first established it was housed in existing buildings on land owned by Mr. Getty. In the late 1960's the Getty Museum's Board of Trustees undertook construction of a new building to house and display the museum's art collection. This new building (Main Museum Building), located on land owned by Mr. Getty but leased to the Getty Museum under a long term lease, was still under construction on March 1, 1973, the lien date for the property tax at issue. The Main Museum Building opened to the general public in January 1974.

The Main Museum Building, modeled after an ancient Roman country villa, houses a collection of Greek and Roman antiquities, a collection of paintings from all major schools of western art from the late 13th to the early 20th centuries, and a collection of decorative arts. The Getty Museum is open to the public free of charge.

---

\*Assigned by the Chairperson of the Judicial Council.

[1] Unless otherwise noted all statutory references are to the Revenue and Taxation Code.

For the tax year 1973-1974, the Getty Museum paid $186,748.58 in property tax assessed by the County on the Main Museum Building.[2] For the same tax year Mr. Getty paid $11,277.08 in property tax on the land leased to the Getty Museum.[3] Although the Getty Museum would generally be entitled to exempt its property from taxation pursuant to the free museum exemption under article XIII, section 3, subdivision (d) of the California Constitution and section 202, subdivision (a)(2), it was unable to claim this exemption for the partially constructed Main Museum Building because it was not used as a museum on the tax lien date.

On December 9, 1977, however, the Getty Museum applied to the County for a refund of its 1973-1974 tax payment on the ground that the Main Museum Building was exempt from taxation under the welfare exemption provided for by sections 214 and 214.1. The County denied the refund asserting that the Getty Museum did not qualify for the welfare exemption. Thereafter, the Getty Museum commenced this action for a refund of the tax payment. (See §§ 5140-5142.)

CONTENTIONS

In this appeal the County contends, in essence, that the free museum and welfare exemptions are separate and nonoverlapping. Thus, it argues that during the temporary period when the Main Museum Building did not qualify for the free museum exemption, the Getty Museum could not avoid taxation by resorting to the welfare exemption. The County further argues that to allow the welfare exemption under these circumstances, would unduly expand the definition of "charitable purposes." As indicated above, we are unpersuaded by the County's analysis of the relevant constitutional and statutory provisions.

DISCUSSION

1. ■ *A nonprofit entity may qualify for the free museum exemption or the welfare exemption or both.*

Article XIII, section 3, subdivision (d) of the California Constitution exempts property used for libraries and museums that are free and open to the

---

[2]Of the $186,748.58 in property tax paid by the Getty Museum, $6,147.53 represents a flood control assessment. In its motion for summary judgment, the Getty Museum conceded that the welfare exemption does not grant an exemption from a flood control assessment. (See *Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.3d 1045].) Thus, the judgment was for the sum of $180,351.05.

[3]The property tax paid by Mr. Getty is not at issue in this appeal.

public.[4] The exemption is self-executing and is triggered by the *use* of the property for the single, stated exempt purpose. The status of the owner of the property is irrelevant so long as the property is used as a free museum. The free museum exemption, however, does not apply to buildings under construction. (Cal. Const., art. XIII, § 5.)[5] Thus, both the Getty Museum and Mr. Getty are entitled to claim the free museum exemption. However, they could not do so until the Main Museum Building opened to the general public.

In contrast to the narrowly defined self-executing free museum exemption, the welfare exemption requires not only the use of the property for an exempt purpose, but also that the owner of the property be a nonprofit entity organized for "religious, hospital, scientific, or charitable purposes." (Cal. Const., art. XIII, § 4, subd. (b).) Moreover, the welfare exemption is not self-executing; the Constitution empowers the Legislature to grant the exemption *only to the extent it deems proper.*[6] In exercising this power, the Legislature, by imposing a number of financially restrictive conditions, has limited the welfare exemption to those entities that are truly not for profit.[7]

---

[4]Article XIII, section 3, subdivision (d) of the California Constitution provides: "The following are exempt from property taxation . . . (d) Property used for libraries and museums that are free and open to the public." The free museum exemption is codified in section 202, subdivision (a)(2). That section provides in relevant part: "(a) The exemption of the following property is as specified in subdivisions (a), (b), (d), and (h) of Section 3 of Article XIII of the Constitution . . . (2) Property used for free public libraries and free museums."

[5]Article XIII, section 5 of the California Constitution, in omitting reference to section 3, subdivision (d), provides: "Exemptions granted or authorized by Sections 3(e), 3(f), and 4(b) apply to buildings under construction, land required for their convenient use, and equipment in them if the intended use would qualify the property for exemption."

[6]In relevant part article XIII, section 4 of the California Constitution provides: "The Legislature may exempt from property taxation in whole or in part: . . . (b) Property used exclusively for religious, hospital, or charitable purposes and owned or held in trust by corporations or other entities (1) that are organized and operating for those purposes, (2) that are nonprofit, and (3) no part of whose net earnings insures to the benefit of any private shareholder or individual."

[7]Section 214 states in pertinent part: "Property used exclusively for . . . charitable purposes owned and operated by . . . funds . . . organized and operated for . . . charitable purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit; . . .

"(2) No part of the net earnings of the owner insures of the benefit of any private shareholder or individual;

"(3) The property is used for the actual operation of the exempt activity, and does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose;

"(4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession;

"(5) The property is not used by the owner or members thereof for fraternal or lodge

The Legislature, however, has extended the welfare exemption to facilities under construction. (§ 214.1.)[8] Thus, the Getty Museum, a nonprofit entity, could claim the exemption to exempt the Main Museum Building from taxation during the time it was under construction if it intended to use the building exclusively for charitable purposes. Mr. Getty, on the other hand, could not claim the welfare exemption to exempt the land from taxation.

Given the nature and purpose of the two exemptions, they can, under proper circumstances, overlap. Indeed, section 214 explicitly provides that the "exemption shall be in addition to any other exemption . . . provided by law." Thus, the potential availability of the free museum exemption did not bar the Getty Museum from claiming the welfare exemption if it intended to use the Main Museum Building for charitable purposes.

In contending that the two exemptions are separate and nonoverlapping, the County resorts to a maxim of statutory construction. It invokes the maxim *expresio unius est exclusio alterius* to exclude museums (and libraries) from the welfare exemption. This maxim, however, does not apply where the statutory provision is free from ambiguity or where application of the maxim would frustrate legislative intent. (See *Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599 [68 Cal.Rptr. 297, 440 P.2d 497].)

Here, we find no ambiguity in the welfare exemption; it allows a nonprofit entity to exempt from taxation property that is used for religious, hospital, scientific or charitable purposes. The exemption is in addition to any other exemption allowed by law, and it may be claimed to exempt facilities under construction. (§§ 214 and 214.1.)

Furthermore, in this instance the Legislature has clearly expressed its intent that the maxim not operate to preclude an overlapping application of the two exemptions. In 1979 the Legislature amended section 214 to add the following language: ". . . and the existence of the exemption provision in paragraph (2) of subdivision (a) of Section 202 [the legislative codification of the free museum exemption] shall not preclude the exemption under this section for museum or library property." This amendment was accompanied by a statement of legislative intent indicating that the purpose

---

purposes, or for social club purposes except where such use is clearly incidental to a primary . . . charitable purpose;

"(6) The property is irrevocably dedicated to . . . charitable . . . purposes."

[8]Section 214.1 states: "As used in Section 214, 'property used exclusively for religious, hospital or charitable purposes' shall include facilities in the course of construction on or after the first Monday of March, 1954, together with the land on which the facilities are located as may be required for their convenient use and occupation, to be used exclusively for religious, hospital or charitable purposes."

of the amendment was to reaffirm the availability of the welfare exemption for qualifying museums and libraries and that the amendment was declaratory of existing law. (See Stats. 1979, ch. 1188, §§ 9, 11.)

■ While we are not bound by a subsequent legislative interpretation of existing law, it may be considered as a factor in determining the correct meaning and effect of a statute. (See *West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 609-610 [86 Cal.Rptr. 793, 469 P.2d 665].) When the 1979 statement of legislative intent is considered with the general purposes of the welfare exemption and the express language of section 214, there is no need to resort to any maxim of statutory construction to discern the intent and scope of the welfare exemption. To hold that the two exemptions are exclusive and nonoverlapping would be inconsistent with the express language of section 214 and would frustrate rather than promote the beneficial purposes of the welfare exemption.

## 2. *The Getty Museum is organized for a charitable purpose.*

Throughout this litigation, the County has conceded that the Getty Museum satisfied all of the conditions necessary to establish its nonprofit status under section 214. ■ The County does suggest, however, that using property for a museum is not a "charitable" activity encompassed by the welfare exemption. There is no merit to this contention.

As noted above, our Supreme Court treats the term "charitable" as one to be broadly construed in favor of the welfare exemption. (See *Stockton Civic Theatre* v. *Board of Supervisors* (1967) 66 Cal.2d 13, 18 [56 Cal.Rptr. 658, 423 P.2d 810]; see also *Greek Theatre Assn.* v. *County of Los Angeles* (1978) 76 Cal.App.3d 768, 776 [142 Cal.Rptr. 919]; *Santa Catalina Island Conservancy* v. *County of Los Angeles* (1981) 126 Cal.App.3d 221, 235 [178 Cal.Rptr. 708].) The Supreme Court's broad definition of charitable "encompasses a wide range of activities beneficial to the community." (*Stockton Civic Theatre* v. *Board of Supervisors, supra,* 66 Cal.2d at p. 20.) Moreover, the term embraces "educational purposes." (*Id.,* at p. 20; see also *Lundberg* v. *County of Alameda* (1956) 46 Cal.2d 644, 649-654 [298 P.2d 1].) "The primary test is whether the activity promotes a general community benefit whose 'ultimate recipients [are] either the community as a whole or an unascertainable and indefinite portion thereof.' [Citation omitted.]" (*Greek Theatre Assn.* v. *County of Los Angeles, supra,* 76 Cal.App.3d at p. 777.)

In *Stockton Civic Theatre* v. *Board of Supervisors, supra,* 66 Cal.2d 13, the Supreme Court applied this broad definition to hold that the welfare exemption applied to a civic theatre presenting amateur plays, musicals,

light opera and operetta. And in *Greek Theatre Assn.* v. *County of Los Angeles, supra,* 76 Cal.App.3d 768, this court held that the welfare exemption applied to a nonprofit corporation presenting theatrical and musical productions by professional performers. In both *Stockton Civic Theatre* and *Greek Theatre Assn.* the courts recognized that these cultural activities provided both educational and recreational benefit to the customers through the viewing of the performances.

The purpose and functions of the Getty Museum are analogous. By displaying Greek and Roman antiquities, Renaissance paintings and 17th and 18th century decorative arts, it provides a cultural, educational and recreational resource to all the people of Southern California. The Getty Museum provides a link to the past and inspiration to current and future generations of Californians.

DISPOSITION

Since the Getty Museum was entitled to claim the welfare exemption to exempt the Main Museum Building from taxation during the period of its construction, the trial court properly awarded it a refund of its 1973-1974 property tax payment.

Accordingly, the judgment is affirmed.

Schauer, P. J., and Thompson, J., concurred.