[No. A034522. First Dist., Div. Four. Oct. 28, 1987.]

COUNTY OF SONOMA et al., Plaintiffs and Respondents, v. STATE BOARD OF EQUALIZATION et al., Defendants and Appellants;
UNION OIL COMPANY OF CALIFORNIA, et al., Interveners and Appellants.

984

COUNSEL

John K. Van de Kamp, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendants and Appellants.

James P. Botz, County Counsel, Rosemary H. Morgan, Deputy County Counsel, Derek J. Simmons and Simmons & Wilhelm for Plaintiffs and Respondents.

Robert D. Raven, Thomas H. Steele, Kathy J. Bagdonas and Morrison & Foerster for Interveners and Appellants.

OPINION

**SABRAW, J.**—In ruling on cross-motions for summary judgment, the superior court determined that Revenue and Taxation Code[1] section 6353 does not exempt sales of geothermal steam from Sonoma County's general retail sales tax. As a result, it ordered the Board of Equalization to commence collection of appropriate past and future taxes. We first hold that postjudgment amendment of section 6353 in 1986 was intended by the Legislature to make it clear that such sales are and have been exempt from local sales taxes under the statute. We then hold that the 1986 legislation may be applied retroactively. Accordingly, we need not determine whether the pre-1986 versions of section 6353 exempted sales of geothermal steam. In view of these holdings, we reverse.

## I. THE FACTUAL AND PROCEDURAL HISTORY

In 1955, the Legislature enacted the Bradley-Burns Uniform Local Sales and Use Tax Law (hereinafter Bradley-Burns) as part of the Revenue and Taxation Code. (§ 7200, et seq.; Stats. 1955, ch. 1311, § 1, p. 2381.) It was the first legislation which authorized counties to adopt and impose sales and use taxes. Under Bradley-Burns, the State Board of Equalization (hereinafter Board) is the sole agency authorized to administer and collect county sales and use taxes. (§ 7202, subd. (a)(4).) Each county adopting a local sales and use tax is required to execute a contract with the Board which provides that the Board will perform all functions incident to the administration and operation of the tax ordinance. (*Ibid.*)

Sonoma County first imposed a tax on the privilege of selling tangible personal property at retail in 1956. Pursuant to Bradley-Burns, it entered

---

[1]Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

into a written contract with the Board providing that the Board would collect the sales taxes imposed under the tax law and remit the appropriate revenues to the county.

Facilities to take advantage of the geothermal energy resources in the area known as The Geysers in Sonoma County were first constructed in 1957. Several companies captured the steam and sold it to utility companies which used it to spin turbines, thereby generating electricity. The steam was delivered to the utility facilities by pipeline. (See *Pariani* v. *State of California* (1980) 105 Cal.App.3d 923, 926-928 [164 Cal.Rptr. 683].) No sales tax was collected by the Board on sales of the geothermal steam in these circumstances because it considered the sales to be exempt under section 6353.[2]

The property tax-limitation initiative known as Proposition 13 was passed by the electorate in 1978. It placed significant restraints on the ability of counties to generate revenues as they had in the past. (See generally *ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859 [210 Cal.Rptr. 226, 693 P.2d 811].)

In 1981, Sonoma County filed a petition for writ of mandate in the Supreme Court, seeking an order directing the Board to change its interpretation of section 6353 and to commence collecting taxes on the sale of geothermal steam. The petition was denied on June 26, 1981.

In June 1982, Sonoma County and Sonoma County resident/taxpayer Leonard Whorton filed a petition for writ of mandate in the superior court seeking much of the same relief previously sought in the 1981 Supreme Court petition. The Board and Kenneth Cory, in his capacity as State Controller, were named as defendants. Shortly thereafter, a number of energy companies and public utilities successfully intervened in the proceedings. Thermal Power Company, Magma Geysers, Inc.,[3] Union Oil

---

[2] Section 6353 has been amended several times since it was first enacted in 1941. The version which was construed by the trial court in this matter was that which existed between 1978 and 1986. It provided: "There are exempted from the taxes imposed by this part the gross receipts from the sales, furnishing, or service of and the storage, use, or other consumption in this state *of gas,* electricity *and water* when delivered to consumers through mains, lines, or pipes, and water when sold to an individual in bulk quantities of 50 gallons or more for general household use in his residence if the residence is located in an area not serviced by mains, lines or pipes, and of exhaust steam, waste steam, heat, or resultant energy, produced in connection with cogeneration technology, as defined in Section 25134 of the Public Resources Code." (Stats. 1978, ch. 1010, § 6, pp. 3103-3104, italics added.)

[3] Magma and Thermal alleged that they owned and operated the Magma Thermal Power Project geothermal steam production facilities in Sonoma County which they used to sell steam to Pacific Gas & Electric. The sale contract provided that Magma Thermal Power Project was liable for any sales taxes imposed on the transaction.

Company of California (Union Oil),[4] the Sacramento Municipal Utility District (SMUD),[5] San Diego Gas & Electric Co.,[6] Southern California Edison Co.,[7] and Northern California Power Agency (NCPA)[8] (hereinafter sometimes collectively referenced as intervenors) based their intervention petition on the ground that they would bear responsibility for sales taxes if Sonoma County's interpretation of section 6353 was accepted by the court.[9]

Cross-motions for summary judgment were brought by the parties. Sonoma County claimed that none of its officials were ever notified that the Board had a policy of not collecting sales tax on sales of steam at The Geysers. In addition, Sonoma County asserted that none of its officials charged with responsibility for oversight of the county sales tax knew prior to 1981 that the Board had interpreted section 6353 as exempting sales of steam from The Geysers.

After considering the record and hearing argument, the court granted plaintiffs' motion, denied defendants' and intervenors' motions, and entered judgment in favor of plaintiffs. The court thereafter issued a writ of mandate which directed the Board to collect the taxes in question and remit Sonoma County's share to it.[10] The Board, the State Controller, and the intervenors filed timely notices of appeal.

---

[4] Union Oil alleged that it owned several geothermal energy sites and sold or planned to sell geothermal steam to electric utilities for generation of electricity.

[5] SMUD alleged that it had a contract with Aminoil, USA, for the purchase of geothermal steam. The contract required SMUD to reimburse Aminoil for any payment of sales taxes on geothermal steam.

[6] San Diego Gas & Electric Co. planned to own and operate a generating facility in Imperial County that would purchase geothermal steam from Union Oil and Chevron Geothermal Company of California pursuant to contracts that required SDG&E to reimburse Union Oil and Chevron for any sales taxes imposed on the sale of geothermal steam.

[7] Southern California Edison alleged that it purchased geothermal steam from Union Oil's Imperial County facilities under a contract which required it to reimburse Union Oil for any sales tax imposed on the transaction.

[8] NCPA consists of 11 cities with publicly-owned electrical utility distribution systems and one rural electrical cooperative. It had recently completed construction of a geothermal generating plant in Sonoma County. It planned to purchase geothermal steam under a contract which required it to reimburse the seller of the steam for any sales taxes imposed on the sale.

[9] Sonoma County had named some of the intervenors as real parties in interest in its Supreme Court petition.

[10] The writ comanded the Board and appellant Cory to: "a. Immediately commence collecting, and to continue collecting, state and local sales taxes on sales of geothermal steam at the Geysers in Sonoma County;

"b. Immediately commence and to prosecute enforcement actions to collect all delinquent state and local sales taxes on sales of geothermal steam at the Geysers in Sonoma County, not otherwise barred by the applicable period of limitations;

"c. Transmit to the County of Sonoma pursuant to applicable statutes, the County of Sonoma's share of such local sales taxes collected pursuant to part a. and b. above."

At the same time that the present litigation was proceeding, Senate Bill No. 2315 was introduced into the Legislature on February 21, 1986. The sole purpose of the bill was to amend section 6353 in order to make it clear that geothermal steam is exempt from retail sales and use taxes when delivered through mains, lines, or pipes. It accomplished that result by adding the words "including steam and geothermal steam, brines, and heat" to the statute.[11] The bill contained a statement that it was intended to be declaratory of existing law and to "codify the longstanding administrative practice of the State Board of Equalization which interprets Section 6353 . . . as exempting steam from sales and use taxation." (Stats. 1986, ch. 420, § 2.) Finally, Senate Bill No. 2315 was designated as urgency legislation.

Sonoma County strenuously opposed Senate Bill No. 2315, asserting the same legal and historical analysis that it presented in the trial court. Lake County borders Sonoma County and contains a portion of the geothermal resources known as The Geysers. Its Board of Supervisors initially opposed the amending legislation, but later withdrew that opposition and supported passage. Imperial County also contains significant geothermal resources. Its Board of Supervisors supported passage of the bill. Various special and school districts in Imperial and Lake Counties also supported passage of Senate Bill No. 2315.

Despite Sonoma County's opposition, the bill was enacted into law. It became operative in 1986 shortly after the notices of appeal were filed in this case.

## II. ANALYSIS

### A. *Plaintiffs Have Standing to Bring their Action.*

The Board initially argues, in effect, that respondents have no standing to bring a judicial challenge to its interpretation of section 6353. The Board contends that there is no authority for such a proceeding, asserting that when the Legislature adopted the Bradley-Burns Act, it vested the Board with exclusive authority for interpretation and administration of the sales and use tax laws. In the Board's view, permitting taxpayers or local

---

[11] As amended, section 6353 now provides: "There are exempted from the taxes imposed by this part the gross receipts from the sales, furnishing, or service of and the storage, use, or other consumption in this state of gas, electricity, and water, *including steam and geothermal steam, brines, and heat,* when delivered to consumers through mains, lines, or pipes, and water when sold to an individual in bulk quantities of 50 gallons or more for general household use in his *or her* residence if the residence is located in an area not serviced by mains, lines or pipes, and of exhaust steam, waste steam, heat, or resultant energy, produced in connection with cogeneration technology, as defined in Section 25134 of the Public Resources Code." (Stats. 1986, ch. 420, § 1.)

governmental entities such as Sonoma County to seek judicial relief challenging Board interpretations of the Revenue and Taxation Code would disrupt the Board's uniform administration of the sales and use tax laws as well as contravene the intent behind the Bradley-Burns Act. We disagree.

■ Taxpayer suits are well recognized in California jurisprudence and are explicitly authorized by statute. (Code Civ. Proc., § 526a.) Among other things, section 526a has been interpreted as authorizing a taxpayer to contest the legality of a taxing statute. For instance, in *Lundberg* v. *County of Alameda* (1956) 46 Cal.2d 644 [298 P.2d 1] a taxpayer challenged the constitutionality of a tax exemption for nonprofit schools as operated by religious organizations. (Cf. *TRIM, Inc.* v. *County of Monterey* (1978) 86 Cal.App.3d 539, 542 [150 Cal.Rptr. 351] [taxpayer had no standing under Code of Civil Procedure section 526a to challenge taxing authority's exercise of discretion]; see generally, 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 134-137, pp. 165-168.)

Plaintiff Whorton is a taxpayer, albeit not a taxpayer who is challenging an assessment of taxes against himself. His assertion of standing is premised on the theory that defendants are without authority to create a de facto exemption from Sonoma County's sales tax and have illegally expended funds by administering the sales tax law while recognizing such an improper exemption. The circumstances of this case are significantly different from those in *TRIM, Inc.* v. *County of Monterey supra*, 86 Cal.App.3d 539. There, the Court of Appeal held that the plaintiff taxpayer had no standing to challenge alleged unequal property assessment practices because the taxpayer was, in effect, contesting the taxing authority's legitimate exercise of its discretion. (*Id.* at p. 543.) By contrast, here plaintiff Whorton has, in effect, asserted that neither defendant has discretion to create a de facto exemption for geothermal steam sales. The distinction is highly significant. Although the plaintiff taxpayers in each case asserted that the tax administrator had failed to collect available revenues, plaintiff Whorton is not challenging the exercise of the Board's legitimate discretion, but rather the extent of the Board's authority under section 6353. In the circumstances of this case, we hold that Whorton has standing to challenge the Board's interpretation and application of section 6353.

■ Sonoma County rests its assertion of standing on the Bradley-Burns contract it executed with the Board and the statutory duty of defendants to properly administer its sales tax ordinance pursuant to Bradley-Burns. In view of the fact that the Bradley-Burns Act required Sonoma County to execute a contract with the Board in order to implement its sales tax, we have no difficulty concluding that the statutory scheme implicitly grants Sonoma County standing to seek judicial review of the Board's actions

under the contract. Finally, the fact that Sonoma County entered into a contract which authorized the Board to administer and collect the County's sales and use taxes pursuant to the Bradley-Burns Act does not persuade us to modify our conclusion that Sonoma County has standing to challenge the Board's interpretation and application of section 6353. Nothing in the county's sales tax ordinance,[12] the contract,[13] or the Bradley-Burns Act suggests that either Sonoma County or the Legislature ever intended to grant the Board absolute, unlimited and arbitrary authority to interpret the tax laws without the possibility of judicial review.

The Board's assertion that it may interpret and apply section 6353 free from judicial review violates basic principles underlying our governmental system of checks and balances. In our tripartite system of government the Legislature enacts the laws, the executive branch (of which the Board is a part) implements and administers those laws, and ultimate responsibility for interpretation of the laws is vested in the judiciary. The Board has failed to proffer any convincing justification for its theory of nonreviewability which differentiates the circumstances of this case from the myriad number of situations where courts review executive interpretations of laws enacted by the Legislature. Such judicial review has not and need not disrupt the orderly administration of the tax laws. In sum, we totally reject this assertion of executive nonaccountability.

B. *The 1986 Amendment of Section 6353 Explicitly Exempted Retail Sales of Geothermal Steam from Sales and Use Taxes and May be Applied Retroactively.*

We begin with the fundamentals. ■ "Statutes granting exemption from taxation must be reasonably, but nevertheless strictly, construed

---

[12] Sonoma County's ordinance provided, in relevant part, that its purpose was: "(b) To adopt a sales and use tax ordinance which incorporates provisions identical to those of the Sales and Use Tax of the State . . .

"(c) To adopt a sales and use tax ordinance which imposes a one and one quarter percent (1-1/4%) tax and provides a measure therefor that can be administered and collected by the State Board of Equalization in a manner that adopts itself as fully as practicable to, and requires the least possible deviation from, the existing statutory and administrative procedures followed by the State Board of Equalization in administering and collecting the State Sales and Use taxes."

[13] The contract provided, inter alia: "A. Administration. The Board and County agree that the Board shall perform exclusively all functions incident to the administration and operation of the County [sales and use tax] ordinance.

" Other applicable laws. The County agrees that all provisions of law applicable to the administration and operation of the State Sales and Use Tax Law shall be applicable to the administration and operation of the County ordinance . . . .

". . . . . . . . . . . .

"D. Rules. The Board shall prescribe and adopt such rules and regulations as in its judgment are necessary or desirable for the administration and operation of the County ordinance and the distribution of the local taxes collected thereunder."

against the taxpayer. [Citations.] The taxpayer has the burden of showing that he clearly comes within the exemption. [Citations.] An exemption will not be inferred from doubtful statutory language." (*Hospital Service of California* v. *City of Oakland* (1972) 25 Cal.App.3d 402, 405 [101 Cal.Rptr. 800].)

■ The primary role of a court when construing statutes is to ascertain the intent of the Legislature "so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Appellants contend that the plain meaning of section 6353 has always encompassed geothermal steam because it can be characterized as either "water" or "gas." Each of those terms has always been included in the language of section 6353. Sonoma County responds that the reference in section 6353 to "gas" refers only to hydrocarbon gas. It argues that the term "water" does not include geothermal steam because water must be in liquid form. In its view, therefore, the sales in question were not exempted by section 6353 as it existed before the 1986 amendment.[14]

■ Because we are construing a statute that has been amended during the course of litigation over its meaning, we must first determine the impact, if any, of the amendment on the judgment. Needless to say, there remains no dispute between the parties over the meaning of section 6353 as amended in 1986. The Legislature has now made it clear that geothermal steam is exempt from local and county sales taxes when delivered to customers at issue here. Plaintiffs do not contend otherwise. However, other than noting the 1986 amendment and summarily asserting that it does not affect the judgment before us, plaintiffs have failed to address the issue of retroactivity.[15] As intervenors observe, ignoring the retroactivity issue does not resolve

[14] We note that Sonoma County's argument might logically be extended to reach the opposite conclusion. Sonoma County asserts that the Legislature knew the term "steam" could be used to explicitly specify that the gaseous form of water fell within section 6353 and chose not to do so. However, it can also be argued that the Legislature knew that the term "hydrocarbon gas" would clearly exclude non-hydrocarbon gases such as steam. Thus, the Legislature's use of the more general term "gas" could be interpreted as evidence that the Legislature intended section 6353 to include all gases.

Sonoma County also cites to past situations in which some of the parties have asserted that geothermal steam was water or gas whenever it suited their purpose at the time. (See *Arthur E. Reich* v. *Comr. of Internal Revenue* (1969) 52 T.C. 700 [Thermal argued that steam was gas, not water]; but see *United States* v. *Union Oil Co. of California* (9th Cir. 1977) 549 F.2d 1271 [Union Oil argued that steam was water, not gas]; *Pariani* v. *State of California, supra,* 105 Cal.App.3d 923 [State argued that the geothermal steam at The Geysers was neither a gas nor water but instead, constituted mineral deposits or "mineral water" for purposes of the Public Resources Code].)

[15] After oral argument, plaintiffs informally requested that we vacate our order of submission and grant leave for supplemental briefing on the issue. Inasmuch as the issue was addressed by intervenors in their opening brief and plaintiffs chose not to reply to it, we denied the request.

it. Indeed, because we conclude that the 1986 amendment applies retroactively, we need not engage in a lengthy analysis of the legislative and administrative history of section 6353.

When the Legislature enacted Senate Bill No. 2315, it expressed its opinion that section 6353 already exempted retail sales of geothermal steam from sales taxes. However, the Legislature recognized the rule that a subsequent legislative interpretation of an existing law is not binding on the judiciary. (See e.g., *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1137 [203 Cal.Rptr. 886]; *J. Paul Getty Museum* v. *County of Los Angeles* (1983) 148 Cal.App.3d 600, 606 [195 Cal.Rptr. 916]; *Standard Oil Co.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 765, 770 [114 Cal.Rptr. 571].) As a result, through Senate Bill No. 2315 the Legislature added new language to section 6353 in order to eliminate the ability of a taxing authority to seek a contrary judicial interpretation of the previous version of the statute which would affect future imposition of sales taxes.

The question of whether sales of geothermal steam which occurred before the effective date of the 1986 amendment are exempt requires analysis of the retroactivity issue. ■ It is the general rule that "legislative changes do not apply retroactively unless the Legislature expresses its intention that they should do so." (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 371 [55 Cal.Rptr. 23, 420 P.2d 735].) ■ In the present case, it is abundantly clear that the Legislature intended the new version of section 6353 to apply retroactively. The Legislature expressly stated in Senate Bill No. 2315 that it interpreted the pre-amendment version of section 6353 as already exempting sales of geothermal steam from sales taxes. The Legislature's intent that the 1986 amendment be applied retroactively could not be clearer.[16]

The last issue remaining for us to analyze is whether or not the Legislature has the power to specify that a revised tax exemption may be applied retroactively. In *Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990 [141 Cal.Rptr. 731], the court described the rules which govern the ability of the Legislature to apply changes in the tax laws retroactively. ■ "[A]s a general proposition the Legislature cannot by a subsequent act increase or decrease the rate, remit the tax or in any way surren-

---

[16] The issue of retroactivity was considered at length in the legislative battle over passage of Senate Bill No. 2315. In fact, Sonoma's County Counsel wrote to the bill sponsor expressing the county's concern about the effect retroactive application of the statutory amendment would have. While we do not view this communication as any sort of admission by Sonoma County that Senate Bill No. 2315 can be lawfully given retroactive application, it does indicate that the issue was a primary consideration in the legislative conflict.

der, impair or limit rights that have become fixed and vested. [Citation.] To this general rule, however, there is a well recognized exception. It has been consistently held that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of the constitutional prohibition if those funds are expended for a public purpose. [Citations.] ■ As stated in *City of Oakland* v. *Garrison* (1924) 194 Cal. 298, 302 [228 P. 433]: '[W]here the question arises as to whether or not a proposed application of public funds is to be deemed a gift within the meaning of that term as used in the constitution, *the primary and fundamental subject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose* within the jurisdiction of the appropriating board or body, *it is not,* generally speaking, to be *regarded as a gift.*' (Italics added. [Citation.]) It is likewise settled that if a public purpose is served by the expenditure of public funds, the constitutional prohibition is not violated even though there may be incidental benefits to private persons [citations]. Even more importantly, under an unbroken line of cases the determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis. [Citations.]" (*Id.* at pp. 1003-1004.)

■ In our view, there was a reasonable basis for the Legislature to exercise its discretion and conclude that retroactive application of the 1986 amendment to section 6353 served an important public purpose. The Legislature has stated that it is the policy of California to promote "all feasible uses of alternative energy supply sources," including geothermal resources, (Pub. Res. Code, § 25008.) Public Resources Code section 26001 consists entirely of legislative findings regarding alternative energy sources. It provides: "The Legislature finds that it is necessary and essential that the state . . . use all practical and commercially feasible means to promote the prompt and efficient development of energy sources which are renewable or which more efficiently utilize and conserve scarce energy resources. Furthermore, the Legislature finds that the promotion of energy sources which reduce the degradation of the environment and which protect the health, welfare, and safety of the people of this state is in the public interest and serves a public purpose."[17] Retroactive application of a sales tax exemption for sales of geothermal steam certainly promotes continued use of geothermal steam as an alternative energy resource. We conclude that there was a valid public purpose served by Legislature's decision to retroactively apply the amendment enacted by Senate Bill No. 2315.

---

[17] Public Resources Code section 26003, subdivision (d), defines alternative energy sources as including geothermal sources of energy and any other source of energy, "the efficient use of which will reduce the use of fossil and nuclear fuels."

Plaintiffs nevertheless contend that the Legislature's action violates the constitutional prohibition against making a gift of public funds (Cal. Const., art. XVI, § 6) under the principles applied in *Golden Gate Bridge, etc. District* v. *Luehring* (1970) 4 Cal.App.3d 204 [84 Cal.Rptr. 291]. In that case, the Golden Gate Highway and Bridge District had accumulated a surplus from the collection of tolls. The Legislature attempted to distribute the surplus to the county governments which comprised the district. When the district manager refused to make the payments, the bridge district sought a writ of mandate from this court which would compel him to comply with the legislation. Although this division initially issued an alternative writ, after further review we denied the petition, concluding that the legislation violated the gift of public funds prohibition then found in article XIII, section 25, of the California Constitution.

In our decision we acknowledged that the articulated theory behind the distribution was the so-called "refund" of monies contributed by the taxpayers of the various counties for construction of the bridge. (*Golden Gate Bridge, etc. District* v. *Luehring, supra,* 4 Cal.App.3d 204, 211-212.) However, we rejected the "refund" theory, concluding that the constitutional prohibition included a concern that money might be collected from the people for one purpose (bridging the Golden Gate) and then be used for another purpose (operation of county governments). Moreover, we relied heavily on the fact that the monies in question had been collected from toll payers but were to be distributed to county governments for the benefit of a different group—district taxpayers. (*Id.* at p. 214.)

Sonoma County argues that retroactive application of amended section 6353 suffers from the same fatal infirmities that were present in the *Golden Gate* case. We do not agree. It is true that retroactive application of the amended statute can be viewed as exempting past sales of geothermal steam from both state and Sonoma County sales taxes.[18] However, we find the situation distinguishable from the circumstances before us in *Golden Gate.* This is not a situation in which the Legislature attempted to redistribute funds previously collected from one group of taxpayers or toll payers to other groups or governmental bodies. The sought after taxes (which have never been collected) would have been paid by the very same taxpayers that receive the benefit of retroactive application of the statute. (Cf. *Atlantic Richfield Co.* v. *County of Los Angeles* (1982) 129 Cal.App.3d 287, 299 [180 Cal.Rptr. 901] [refund of previously collected county taxes mandated by retroactive application of state legislation would be made to same persons who paid the taxes in the first place].)

---

[18] Of course, as we have previously explained, our resolution of the retroactivity issue has eliminated the need for us to resolve the question of whether the previous versions of section 6353 already exempted such sales from county sales taxes.

Moreover, state legislation affording retroactive tax relief has been consistently upheld even in situations where the legislation affects vested county taxes so long as there is a valid public purpose served by retroactive application. (E.g., *Schettler* v. *County of Santa Clara, supra,* 74 Cal.App.3d 990, 1004-1006; *Atlantic Richfield Co.* v. *County of Los Angeles, supra,* 129 Cal.App.3d 287, 295-299; *Community Television of So. Cal.* v. *County of Los Angeles* (1975) 44 Cal.App.3d 990, 995-998 [119 Cal.Rptr. 276].)

Based on the foregoing analysis, we hold that retroactive application of the 1986 amendment of section 6353 does not violate the constitutional prohibition against gifts of public funds. Thus, past and future sales of geothermal steam are exempt from Sonoma County's retail sales tax irrespective of how the pre-amendment version of section 6353 is interpreted.

The judgment is reversed. The superior court is directed to enter judgment denying the petition for a writ of mandate. The parties shall bear their own costs on appeal.

Anderson, P. J., concurred.

POCHÉ, J.—I concur in the judgment of this court on the basis that, since its original enactment in 1941, Revenue and Taxation Code section 6353 in all its various forms has always exempted sales of geothermal steam from retail sales tax.

A petition for a rehearing was denied November 25, 1987, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 27, 1988.