[No. C007151. Third Dist. Nov. 1, 1991.]

FELLOWSHIP OF FRIENDS, INC., Plaintiff and Appellant, v.
COUNTY OF YUBA, Defendant and Respondent.

**COUNSEL**

Felman, Waldman & Kline, George W. Putris, Charles D. Chalmers, Formaciari, Zuckerman & McQuiller and Michael J. McQuiller for Plaintiff and Appellant.

Daniel G. Montgomery, County Counsel, and David A. Sandino, Special County Counsel, for Defendant and Respondent.

**OPINION**

RAYE, J.—In this opinion, we consider the definition of "museum" as used in article XIII, section 3, subdivision (d)[1] of the California Constitution and Revenue and Taxation Code section 202, subdivision (a)(2)[2] which together exempt from taxation property used for "museums that are free and open to the public." Plaintiff Fellowship of Friends applied for a property tax exemption for the years 1985-1986, 1986-1987, and 1987-1988 for one of its buildings as a free museum open to the public. Defendant County of Yuba denied the exemption. Plaintiff filed the instant action for reimbursement of the taxes paid for the three years in question. After a court trial, judgment

---

[1] All references to article XIII pertain to California Constitution, article XIII, section designated, unless otherwise indicated.

[2] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

was entered for defendant. Finding the trial court properly applied the constitutional exemption, we shall affirm.

## FACTS AND PROCEEDINGS

Plaintiff Fellowship of Friends, Inc., a religious organization with centers around the world, is exempt from state income tax under section 23701d. Plaintiff owns approximately 1,400 acres of property known as "Renaissance" in Yuba County near the town of Dobbins, about 30 miles from Marysville. As part of its beliefs, the organization collects fine art and other artifacts to preserve them for future generations and to change the viewer's emotional and spiritual state. This collection, the artistic value of which is undisputed, is housed on the Yuba County property in a building known as the Goethe Academy (Academy).

In 1983 plaintiff decided to open the collection to the public. The Academy was thereafter opened to the public on Mondays and Tuesdays from 9 a.m. to 7 p.m., with no admission charged. Initially, because of security concerns and limited personnel, plaintiff required visitors to make appointments in order to visit the Academy during open hours, although staff attempted to accommodate drop-in visitors. Plaintiff abandoned this "appointments only" policy in 1987.

The Academy is a 5,600-square-foot building. The art objects were displayed in designated rooms on the first floor. These rooms, comprising approximately 60 percent of the total floor space, were not segregated from the rest of the Academy. Robert Burton, the founder of the Fellowship of Friends, resided in a portion of the Academy, although business travel caused him to be out of town at least half of the time. The rooms he frequently used as his living area were not part of the tour for museum visitors. The basement area also accommodated several other people who stayed on the premises for indefinite periods of time and assisted in the maintenance and security of the property. While the Academy was closed to the general public, except in connection with the display of art works, many other Fellowship activities took place there and on the grounds, including group dinners, lectures, concerts, music recitals and weddings.

Plaintiff has advertised the art display in the Yuba-Sutter Arts Council newsletter, a quarterly publication, since 1985. Plaintiff prepared a video of the "museum" in 1985. Two articles, one about the museum and another on specific works of art at the Academy, were published in 1985 and 1986 in Apollo magazine, an international art magazine. Since 1985 the plaintiffs placed a listing in the Yellow Pages under "museums," and, at the time of the trial, plaintiff had begun recently to advertise weekly in the Marysville

Appeal-Democrat. No signs directed the public to the museum, and no signs were placed on the building itself to identify it as a museum until approximately the summer of 1987.

Records presented to the trial court indicate the Academy's art display attracted approximately 300 guests per year for the three years in question. The first year, almost 60 percent of those visitors were Fellowship members. The second year, the ratio was approximately 20 percent members to 80 percent nonmembers. The third year for which the trial court had records showed a ratio of about 93 percent nonmembers to seven percent members as museum guests.

On or about March 15, 1985, plaintiff applied for a property tax exemption for the tax year of 1985-1986, asserting that the Academy existed as a free public museum pursuant to article XIII, section 3, subdivision (d) and section 202, subdivision (a)(2). The application states the primary use of the property is as a public museum/religious academy with the incidental use as a parsonage. The application requested the exemption for about 63 percent of the building, or that portion open to the general public, plus 100 percent of the approximately 3.1-acre parcel on which the building is located, which showcases the rose garden, also open to the public. The county denied the exemption, as well as subsequent exemption applications for the years 1986-1987 and 1987-1988. Plaintiff paid the taxes assessed for those years, and then filed a complaint for reimbursement of the taxes paid. After a court trial, the court held that plaintiff had failed to establish the "predominant use" of the property in question was for public museum purposes. Plaintiff appeals from the judgment entered in defendant's favor.

## DISCUSSION

Article XIII, section 3, subdivision (d), provides: "The following are exempt from property taxation: . . . [(d)] Property used for libraries and museums that are free and open to the public and property used exclusively for public schools, community colleges, state colleges, and state universities."[3] This provision is codified in section 202, subdivision (a)(2).[4]

---

[3] The exemption for free museums was added to the Constitution in 1894. The "improvement of educational opportunities for the people of the State of California to the end that they will become more useful and productive citizens" was the stated purpose of the exemption. (Assem. Interim Com. on Rev. & Tax., *Taxation of Property in California*, vol. 4, No. 12, p. 67 (1964).) "The exemption depends on *usage*; ownership alone will not qualify the property for exemption." (Cal. Const. Rev. Com., Rev. & Tax. Rev. Background Study 2, p. 7. (1969), italics added.) We discuss the question of "usage" *post.*

[4] Revenue and Taxation Code section 202, subdivision (a)(2) provides: "The exemption of the following property is as specified in subdivisions (a), (b), (d), and (h) of Section 3 of

■ The constitutional provision is self-executing and no legislative action is necessary to trigger its application. (*J. Paul Getty Museum* v. *County of Los Angeles* (1983) 148 Cal.App.3d 600, 604 [195 Cal.Rptr. 916].)
■ We first consider the meaning of the term "museum" in the context of plaintiff's assertion that the trial court erred in construing the term to require exempt property to be used "primarily" or "predominantly" as a museum.

■ "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) If the language is clear and unambiguous, we look no further in discerning the provision's meaning. (*Alpha Therapeutic Corp.* v. *County of Los Angeles* (1986) 179 Cal.App.3d 265, 271 [224 Cal.Rptr. 498].) ■ We are also constrained by the "general rule [that] constitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will not be enlarged nor extended beyond the plain meaning of the language employed. [Citations omitted.]" (*Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 27 [118 Cal.Rptr. 422].) Nevertheless, even a strict construction must still be a fair and reasonable construction. (*Id.* at p. 28.)

■ Both parties cite Webster's New Collegiate Dictionary for the definition of museum as "an institution devoted to the procurement, care, study, and display of objects of lasting interest or value." Defendant concedes that the Academy is a building whose various uses included the display of artistic works, but asserts that during the time periods in question it was not "devoted" to artistic displays. Thus, according to defendant, because the property had multiple uses, most of which were unrelated to museum purposes, the trial court properly denied plaintiff's exemption claim.

Defendant's argument can be criticized as requiring an excessively rigid adherence to Webster's definitions. The term "devoted" does not appear in the definition of museum offered in other dictionaries.[5] Moreover, it is

Article XIII of the Constitution, except as otherwise provided in subdivision (a) of Section 11 thereof:

" . . . . . . . . . . . . . . . . . . . . .

"(2) Property used for free public libraries and free museums."

[5]For example, Webster's New World Dictionary (3d college ed.): "an institution, building, or room for preserving and exhibiting artistic, historical, or scientific objects."; Webster's Third International Dictionary (unabridged): "an institution devoted to the procurement care, and display of objects of lasting interest or value . . . *a room, building, or locale where a collection of objects is put on exhibition*" (italics added); Random House Dictionary of the English Language (2d ed. unabridged): "a building or place where works of art, scientific

unclear whether the Webster's definition is a reference to the *organization* responsible for the display, or the *building* which houses the organization.[6]

While defendant may rely too heavily on Webster's, its argument is nonetheless sound. A museum is more than a room with paintings on the walls. If that were not so, most office building lobbies would qualify as museums. Every description of property by its function assumes that the described function is a primary use of the property. Thus, a clock is an object primarily used to display the time of day. That it may also be used in the lurch to affix nails to a wall does not make it a hammer.[7] We therefore agree with the trial court that in ordinary parlance a museum is a building whose "predominant purpose" is to house and display objects of lasting value. Property used "for a museum" must be used primarily to house and display objects of lasting value. This does not preclude other uses, but requires the use as a museum to be primary.[8]

We turn then to the question of whether the primary use of the Academy was as a museum. There is no conflict as to the pertinent facts and under such circumstances the question is one of law. (*Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464 [235 Cal.Rptr. 117].) We therefore undertake an independent review of the trial court's decision, applying the constitutional provision to undisputed facts.

Exemptions from taxation are narrowly construed in favor of the state. (*Alpha Therapeutic Corp.* v. *County of Los Angeles, supra,* 179

---

specimens, or other objects of permanent value are kept and displayed." But see, Funk and Wagnalls New Standard Dictionary of the English Language (unabridged): "A *building devoted* to the collection and preservation of works of nature, art, and antiquity, or to the exhibition of rare and intricate articles in the arts, science, or literature." (Italics added.)

[6]Museum is defined as an "institution" devoted to certain described purposes. The term "institution" can refer to either "an organization having a social, educational or religious purpose" or "the building housing an organization." (Webster's New Collegiate Dict.)

[7]Plaintiff notes that "[w]e often ascribe words to things by reference to the thing's recognized form, irrespective of how it is actually used," and suggests that a hammer remains a hammer even if its principal use is as a paperweight. While such an ascription could be made, the Constitution clearly describes exempt property by its function—not its form. Thus, under the approach used in the Constitution, an object used primarily to hold down papers might be regarded as a paperweight even if it has a handle attached to a metal head.

[8]This definition comports with the definition of museum adopted by the State Board of Equalization in Regulation No. 1586 (Cal. Code Regs., tit. 18, § 1586), the regulation which exempts works of art which are purchased as part of the permanent collection of a museum or nonprofit corporation. Regulation No. 1586, subdivision (b)(2), adopted in 1988, states in pertinent part: " 'Museum' for purposes of this regulation *means a place specifically designated for display of artifacts or objects of art* which either: (A) has a significant portion of its display space open to the public without charge during its normal operation hours; (B) has its entire display space open to the public without charge for at least six of its normal operating hours each month of operation; or (C) has its entire display space open without charge to a segment of the student or adult population for educational purposes." (Italics added.)

Cal.App.3d at p. 270; *Honeywell Information Systems, Inc.* v. *County of Sonoma, supra,* 44 Cal.App.3d at p. 27.) The taxpayer has the burden of showing it clearly comes within the exemption. (*Alpha Therapeutic Corp.* v. *County of Los Angeles, supra,* 179 Cal.App.3d at p. 270; *Campbell Industries* v. *State Bd. of Equalization* (1985) 167 Cal.App.3d 863, 870 [213 Cal.Rptr. 533].) Did plaintiff meet its burden? The trial court thought not. We concur.

In concluding that the Academy was not a museum, because the predominant use of the property was not to collect and display art, the trial court was impressed by the many other uses of the property. The "museum" portion of the building was confined to the middle of the first floor and was not segregated from the rest of the Academy. The remainder of the Academy was used for a variety of purposes. It served as a residence for the founder and leader of the Fellowship, living quarters for other members, and a place for dinners, conferences, lectures, weddings and concerts. All of these uses predated the establishment of the museum, and continued thereafter. Accommodations were made to insure that the nonmuseum uses did not interfere with the museum. It appears, however, that little accommodation was necessary because of the museum's limited hours and patronage. During the first year for which an exemption was claimed, the museum was open to the public two days a week by appointment only. During the second and third years, the appointment only policy was discontinued, but the museum remain closed to the public five days out of the week.

Contrary to plaintiff's suggestion, the court did not hold that the use of the Academy for other purposes precluded award of the exemption. Nor did the court appear to view the other uses as interfering with its use as a museum. The court acknowledged that multiple uses were permissible. The issue is whether the Academy's use as a museum was its principal use. Evidence regarding the other uses was probative on this issue. Evidence of plaintiff's appointment policy, the isolated location of the Academy, the lack of publicity and the museum's hours of operation are also relevant in determining the extent to which the property was used as a museum. All such evidence suggested a limited use of the property as a place to store and display the art housed there.

The trial court concluded that plaintiff not only failed to establish the property was used principally as a museum, but that "plaintiff also failed to establish that the property was used even 'significantly' or 'substantially' as a museum." On appeal, plaintiff insists the court's conclusion is premised on another definitional error: the trial court viewed a museum solely as a place where art objects are *exhibited* and ignored the function of a museum as a collector and repository of art for future generations. Plaintiff is mistaken.

The court noted that "[t]he museum portion of the Goethe Academy contained many examples of high quality artwork, books and furnishings . . . ." and acknowledged that a "true museum" both "house[s]" and "display[s]" works of art, and other items of excellence. That it chose to focus on the "display" function reflected two realities. First, the quality and value of the artwork was undisputed, and the consequent value of preserving such work for future generations could be assumed. There was no need to dwell on that fact. Second, as between the function of a museum as a repository and its display function, clearly the latter is of paramount importance for purposes of the exemption. The purpose of the exemption was to encourage the display of art and other items of value to the public. That purpose is not served by granting tax exemptions to warehouses where art is stored, even if such buildings are "open to the public" and no admission is charged and notwithstanding the public benefit accruing from the preservation of the building's contents. A museum must function both as a repository of art or other items of lasting value, and as a place where such items are displayed.

We conclude that the trial court correctly determined plaintiff failed to establish the property in question was "used for a . . . museum" within the meaning of the Constitution. Given this conclusion we need not consider the closely related question of whether the property was "open to the public."

The judgment is affirmed.

Puglia, P. J., and Davis, J., concurred.